Steir v. Girl Scouts                    CV-00-456-B    09/10/02

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Linda J. Steir,
m/n/f Marika Steir

v.                                          Civil No. 00-456-B
                                            **2002 DNH 167**

Girl Scouts of the USA
and Spar & Spindle Council
of the Girl Scouts


MEMORANDUM AND ORDER

Marika Steir ("Marika"), through her mother Linda Steir

("Steir"), brings this action against the Girl Scouts of the

United States of America ("GSUSA") and the Spar & Spindle Council

("Spar & Spindle") alleging that the GSUSA and Spar & Spindle

failed to make reasonable accommodation for Marika in violation

of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101

et seq., and the New Hampshire Law Against Discrimination

("LAD"), N.H. Rev. Stat. Ann. ch. 354-A (1995 & Supp. 2001).

Steir also brings a common law intentional infliction of

emotional distress claim, alleging that one or more incidents

giving rise to this suit caused Marika severe emotional distress.

Defendant GSUSA moves to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  For the reasons that follow, I deny the motion.

## I.  BACKGROUND[1]

GSUSA is a federally chartered, non-profit membership organization.  See 36 U.S.C. § 80301.  Its purposes are:

> (1) to promote the qualities of truth, loyalty, helpfulness, friendliness, courtesy, purity, kindness, obedience, cheerfulness, thriftiness, and kindred virtues among girls, as a preparation for their responsibilities in the home and for service to the community;
> (2) to direct and coordinate the Girl Scout movement in the United States and territories and possessions of the United States; and
> (3) to fix and maintain standards for the movement that will inspire the rising generation with the highest ideals of character, patriotism, conduct, and attainment.

36 U.S.C. § 80302.  The national organization charters 317 regional councils throughout the United States, which in turn oversee local troops.  To obtain a charter, a regional council

---

[1] The background facts are drawn from the parties' evidentiary submissions and are considered in the light most favorable to the plaintiffs.  See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).

-2-

must agree to subscribe to the purposes and adhere to the policies and guidelines of GSUSA. A regional council must make reports of its work to GSUSA and pay a charter fee. A charter confers upon a regional council the right to be identified with GSUSA and use the term "Girl Scouts."

Charters are valid for four years. Eighteen months before a regional council's charter is to expire, GSUSA conducts a review of the council's performance. Findings from a review are presented to committees, and, ultimately, to GSUSA's Board of Directors. If a charter is renewed, it is done so with an accompanying letter outlining the strengths and weaknesses of the regional council. Should a council be found to be particularly deficient, the Board of Directors can renew a charter with qualifications, or not renew a charter at all. The Board of Directors also has the right to conduct compliance audits of regional councils.

GSUSA has issued a charter to Spar & Spindle to use the Girl Scout name in New Hampshire. GSUSA nevertheless maintains that its connection with Spar & Spindle is too attenuated, and its contacts with New Hampshire too minimal, for this court to maintain personal jurisdiction over it. In support of this

contention, GSUSA notes that it does not own, lease or operate any real estate or other property in New Hampshire, does not have an agent or personal representative in New Hampshire, nor has it ever been licensed to do business in New Hampshire. It also alleges that it does not maintain an office or a bank account, and does not have any paid employees in New Hampshire.

## II. STANDARD OF REVIEW

When a defendant contests personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that a basis for asserting jurisdiction exists. See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998); Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997). Because I have not held an evidentiary hearing, Steir need only make a prima facie showing that the court has personal jurisdiction over GSUSA. See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995) (citing United Elec. Radio and Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp., 987 F.2d 39, 43 (1st Cir. 1993) [hereinafter Pleasant St. II]).

To make a prima facie showing of jurisdiction, Steir may not rest on the pleadings. Rather, she must "adduce evidence of

specific facts" that support her jurisdictional claim.  Foster-
Miller, 46 F.3d at 145; Pleasant St. II, 987 F.2d at 44.  I take
the facts offered by the plaintiff as true and construe them in
the light most favorable to the plaintiff's claim.  See Mass.
Sch. of Law, 142 F.3d at 34; Foster-Miller, 46 F.3d at 145.  I do
not act as a fact-finder; instead, I determine "whether the facts
duly proffered, [when] fully credited, support the exercise of
personal jurisdiction."  Rodriguez, 115 F.3d at 84 (citing Boit
v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)).

While the prima facie standard is liberal, I need not
"'credit conclusory allegations or draw farfetched inferences.'"
Mass. Sch. of Law, 142 F.3d at 34 (quoting Ticketmaster-New York,
Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).  I also
consider facts offered by the defendant, but only to the extent
that they are uncontradicted.  See id.

When assessing personal jurisdiction over a non-resident
defendant in a diversity of citizenship case,[2] "a federal court

---

[2] Steir might alternatively argue that the court has federal question jurisdiction over her ADA claim and supplemental jurisdiction over her state law claims.  Personal jurisdiction in a federal question case is governed by the Fifth Amendment's due process clause rather than by its Fourteenth Amendment counterpart.  United States v. Swiss Am. Bank, Ltd., 274 F.3d

exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'" <u>Sawtelle</u>, 70 F.3d at 1387 (quoting <u>Ticketmaster</u>, 26 F.3d at 204). Accordingly, I must determine whether an exercise of jurisdiction is proper under both the New Hampshire long-arm statute and the due process requirements of the federal constitution. <u>See</u> <u>id.</u>; <u>Foster-Miller</u>, 46 F.3d at 144. The New Hampshire long-arm statute, which permits the exercise of personal jurisdiction over a defendant who "transacts any business within [the] State" or "commits a tortious act within [the] State," N.H. Rev. Stat. Ann. § 510:4, I (Supp. 1994), is coextensive with the federal due

610, 618 (1st Cir. 2001). Under the Fifth Amendment, "a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." <u>Id.</u> In a case such as this, however, where the federal question arises under a statute that does not provide for nationwide service of process, Rule 4(e) of the Federal Rules of Civil Procedure requires a court to also look to the forum state's long-arm statute to determine the existence of personal jurisdiction. <u>See</u> <u>United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1086 (1st Cir. 1992); <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 626-27 (11th Cir. 1996). Because, as I have noted, New Hampshire's long-arm statute is co-extensive with the Fourteenth Amendment's due process standard, the personal jurisdiction analysis is the same in this case regardless of whether the court's subject matter jurisdiction rests on federal question jurisdiction or diversity jurisdiction.

process standard.  See Phelps v. Kingston, 130 N.H. 166, 171 (1987); Seymour v. Parke, Davis & Co., 294 F. Supp. 1257, 1259 (D.N.H. 1969) (N.H. Rev. Stat. Ann. § 293-A:15.10 reaches as far as due process allows).  Therefore, I proceed directly to the constitutional due process analysis.

### III.  ANALYSIS

The Due Process Clause precludes a court from asserting jurisdiction over a defendant unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Because the constitutional inquiry is founded on "'traditional conception[s] of fair play and substantial justice,'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)) (alteration in original), determining personal jurisdiction has always been "more an art than a science," Ticketmaster, 26 F.3d at 206 (quoting Donatelli v. Nat'l Hockey League, 893 F.2d 459, 468 n.7 (1st Cir. 1990)).

The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King, 471 U.S. at 474 (citing Int'l Shoe, 326 U.S. at 316); see also Sawtelle, 70 F.3d at 1388. The inquiry into "minimum contacts" is necessarily fact-specific, "involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). A defendant cannot be subjected to a forum state's jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts. Burger King, 471 U.S. at 475 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984); World-Wide Volkswagen, 444 U.S. at 299) (internal quotation marks omitted). Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

A court may assert authority over a defendant by means of either general or specific jurisdiction. See Mass. Sch. of Law,

142 F.3d at 34 (citing Donatelli, 893 F.2d at 462-63); Foster-Miller, 46 F.3d at 144. A defendant who has engaged in continuous and systematic activity in a forum is subject to general jurisdiction in that forum with respect to all causes of action, even those unrelated to the defendant's forum-based activities. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Donatelli, 893 F.2d at 462-63). A court may exercise specific jurisdiction, by contrast, only when the cause of action arises from, or relates to, the defendant's contacts with the forum. See id.; Pritzker, 42 F.3d at 60. Here, I evaluate Steir's claim that this court has general personal jurisdiction.

Two criteria must be met to establish general jurisdiction: (1) "'continuous and systematic general business contacts'" must exist between the defendant and the forum; and (2) the exercise of jurisdiction must be reasonable as demonstrated by certain "gestalt factors." United States v. Swiss America Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001), (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984)).

The standard for such a showing is high.  See Helicopteros, 466 U.S. at 414 (1984); Donatelli, 893 F.2d at 463.

Steir argues that GSUSA has continuous and systematic contacts with New Hampshire because:  (1) GSUSA receives membership dues from each girl who registers as a Girl Scout in New Hampshire; (2) GSUSA receives royalty income from sales of Girl Scout cookies in New Hampshire; (3) GSUSA sells to New Hampshire residents Girl Scout uniforms, clothing, badges, pins, manuals and other paraphernalia through its catalog and website; (4) GSUSA offers training sessions and collects registrations fees for the sessions from New Hampshire troop leaders and other volunteers; (5) GSUSA has held at least one regional training session in New Hampshire; (6) GSUSA insures the activities of all local Girl Scout troops; and (7) GSUSA's manuals set safety and performance requirements for local troops.

In response, GSUSA argues that any revenue derived from New Hampshire residents is both minimal and indirect.  The dues revenue collected from New Hampshire Girl Scouts accounts for less than one hundredth of one percent of its total dues revenue, and the dues are first paid to the local troop or regional

council, which then sends the money to GSUSA; revenues derived from uniform and other equipment sales in New Hampshire are minimal; and only one training session was held in New Hampshire during the time period relevant to this lawsuit.

If revenues derived from cookie and uniform sales were the only consideration, I would agree that GSUSA lacks the "minimum contacts" necessary for this court to exercise general jurisdiction.  See Brock Supply Co. v. Moulding Assocs., Inc., 81 F. Supp. 2d 338, 342-43 (D.P.R. 2000).  However, GSUSA's forum contacts are far more extensive.  GSUSA exists for the purpose of recruiting members and having them participate in activities that are governed by guidelines it sets.  See 36 U.S.C. § 80301. GSUSA conducts extensive reviews of regional councils on a regular basis, and revokes or qualifies charters if the councils are not maintaining enough members or adhering to guidelines. GSUSA has the exclusive rights to badges, emblems, words and phrases associated with the Girl Scouts, see 36 U.S.C. § 80305, which it permits regional councils and local troops to use only after confirming that these entities comply with GSUSA's standards.  Without GSUSA's permission to associate itself with the "Girl Scouts," undoubtedly Spar & Spindle would not attract

-11-

and keep anywhere near as many members.

GSUSA's reliance on the First Circuit's decision in Donatelli v. Nat'l Hockey League, 893 F.2d 459 (1st Cir. 1990) is misplaced. There, the court noted that the National Hockey League ("NHL") had no meaningful presence in Rhode Island, and so it focused on the control that the NHL exercised over its member hockey teams. See Donatelli, 893 F.2d at 470-71. It concluded that the NHL had "very slight influence" over teams, and that "the Bruins entered the Rhode Island market by their own choice and for their own benefit, not as the association's handmaiden." Id. In this case, the opposite is true. Spar & Spindle exists as an arm of GSUSA, and carries out GSUSA's goals and purposes. In short, Spar & Spindle and the local troops it governs cannot exist as they do without the approval of GSUSA in the form of a charter. Because GSUSA exercises considerable control over regional councils, I find that the contacts between GSUSA and New Hampshire are continuous and systematic.

In addition to a finding of continuous and systematic contacts, the exercise of jurisdiction must be reasonable in order for this court to have general jurisdiction over a defendant. See Sawtelle, 70 F.3d at 1395. In assessing

-12-

reasonableness, the First Circuit has set forth five factors, known as the "gestalt factors." Id. (citing Burger King, 471 U.S. at 477). The five gestalt factors are: (1)the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. Id. In the instant case, the gestalt factors weigh in favor of exercising jurisdiction.

a. Burden of Appearing

GSUSA is a federally chartered corporation with its principal place of business in New York. Because New Hampshire is a foreign jurisdiction for GSUSA, litigating in New York would be more convenient. The ordinary inconvenience that GSUSA may confront in litigating in a nearby state, however, does not tip the first factor in favor of GSUSA. Since litigating in a foreign jurisdiction is usually expensive and inconvenient, the First Circuit has held that this factor is "only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker, 42 F.3d at 64; accord Sawtelle, 70 F.3d at 1395.

-13-

Because GSUSA has not demonstrated that its burden is special or unusual, this factor is not meaningful and therefore does not support a finding of unreasonableness.

b. Forum State's Adjudicatory Interest

In analyzing this second factor, "[t]he purpose of [this] inquiry is not to *compare* the forum's interests to that of some other forum, but to determine the extent to which the forum *has* an interest." Sawtelle, 70 F.3d at 1395 (citing Foster-Miller, 46 F.3d at 151) (alteration and emphasis in original). The State of New Hampshire certainly has an interest in protecting its disabled citizens from discrimination. In addition, Marika's claims are not based solely on the federal ADA, but invoke the New Hampshire LAD. N.H. Rev. Stat. Ann. ch. 354-A. According to LAD, discriminating against disabled persons in New Hampshire is a matter of state concern that "threatens the rights and proper privileges of its inhabitants." N.H. Rev. State. Ann. § 354-A:1. Marika has also raised a common law tort claim. A state has a demonstrable interest in exercising jurisdiction over a person who commits a tort within its borders. Ticketmaster, 26 F.3d at 211. The State's adjudicatory interest is significant. Thus, this factor favors the exercise of jurisdiction over GSUSA.

c. The Plaintiffs' Interest in Obtaining Convenient Relief

The First Circuit has repeatedly held that "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395; see, e.g., Foster-Miller, Inc., 46 F.3d at 151; Pritzker, 42 F.3d at 64. In addition, Marika is disabled and wheelchair bound making it inconvenient for her to travel to New York for trial. In light of the deference I must accord Marika and her particular need for a convenient forum for relief, this factor counsels in favor of reasonableness in exercising jurisdiction over GSUSA. See id.

d. Administration of Justice

In this third factor, I must analyze the judicial system's interest in obtaining the most effective resolution of the controversy. See id. Courts often find that this factor does not weigh in either direction. See Ticketmaster, 26 F.3d at 211. In this case, however, substantial discovery has taken place and a second lawsuit between Steir and GSUSA has been filed in this court (Civil Action No. 02-236-B). Therefore, in the interest of judicial economy and efficiency, the fourth factor favors this court retaining its jurisdiction.

e. Pertinent Policy Arguments

The final gestalt factor requires that I consider the common interests of all sovereigns in promoting substantive social policies. See Sawtelle, 70 F.3d at 1395, Ticketmaster, 26 F.3d at 211. This case is unlike Sawtelle, where "the only prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Sawtelle. 70 F.3d at 1395. Here, the injury alleged is linked to the important substantive social issue of preventing the discrimination against the disabled. Marika is a disabled citizen of New Hampshire and an allegation has been made that an out-of-state actor has discriminated against her.

Because the gestalt factors weigh in favor of the retaining jurisdiction, it is reasonable for this court to do so. The contacts between GSUSA and the State of New Hampshire are continuous and systematic and it is proper for this court to exercise general personal jurisdiction over GSUSA.[3]

_____

[3] A second lawsuit between Steir and GSUSA has recently been filed in this court (Civil Action No. 02-236-B). For the same reasons put forth in this order, I find that general jurisdiction over GSUSA exists in that case as well.

-16-

## IV.  CONCLUSION

I deny GSUSA's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) (Doc. No. 49).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 10, 2002

cc:  Kenneth Kirschner, Esq.
     James E. Higgins, Esq.
     Paul T. Muniz, Esq.
     Jennifer L. Parent, Esq.
     John Bisson, Esq.