Steven L. KARRAKER, Michael A. Karraker, and Christopher M. Karraker, Plaintiffs,

v.

RENT–A–CENTER, INC., J. Ernest Tally,[1] and Associated Personnel Technicians, Defendants.

No. 02–CV–2026.

United States District Court, C.D. Illinois, Urbana Division.

Jan. 8, 2003.

---

1. The docket sheet spells Defendant Talley's name as Tally. But filings by Talley's attorney have his name spelled Talley, and so the docket sheet will be changed to reflect the correct spelling.

830

William Riback, Camden, NJ, Mary Lee Leahy, Springfield, IL, for Plaintiffs.

Franklin E. Wright, Winstead, Sechrest & Minick, Dallas, TX, Lorna K. Geiler, Meyer Capel, P.C., Champaign, IL, for Defendants Rent–A–Center and J. Ernest Tally.

Gary Ayers, Foulston & Siefkin, LLP, Wichita, KS, Glenn A. Stanko, Rawles, O'Byrne, Stanko & Kepley, Champaign, IL, for Defendant Associated Personnel Technicians.

## ORDER

McCUSKEY, District Judge.

Plaintiffs wish to raise a claim under the Americans with Disabilities Act, and De-

fendants would like this court to rule on the merits of their motions to dismiss the state law claims currently pending. Both sides therefore objected to the Magistrate Judge's recommendation that this court deny Plaintiffs' request to add an ADA claim to their complaint and also decline to exercise supplemental jurisdiction over the state law claims.

This court has reviewed the Magistrate Judge's reasoning and the objections of the parties. After a thorough and careful de novo review, this court will allow the filing of the Second Amended Complaint, dismiss the FCRA claim, limit the invasion of privacy claim to public disclosure of private facts, and dismiss one defendant for want of personal jurisdiction.

## BACKGROUND

Plaintiffs' Amended Complaint (# 4) sought to initiate a class action lawsuit against Rent–A–Center, Inc. (RAC); J. Ernest Talley, RAC's Chairman of the Board and Chief Executive Officer; and Associated Personnel Technicians (APT). Plaintiffs, current and former employees of RAC, alleged that RAC required all employees or outside applicants seeking management positions to take a battery of written tests, collectively referred to as the Management Test. Several tests included in the Management Test were personality inventories that inquired about personal information including sexual preferences and orientation, religious beliefs and practices, and medical conditions.

APT scored and interpreted the Management Test for RAC, creating a two-page psychological profile about the individuals. RAC distributed this report to the employees' immediate supervisor and placed a copy of it in the employees' personnel file. RAC used the test results in deciding which employees to promote and what additional training to require. Plain-

tiffs assert that RAC formulated no policy or procedure for keeping the test results confidential.

Plaintiffs' Amended Complaint sought relief based on four legal theories: a violation of the Fair Credit Reporting Act (FCRA); a violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act; engaging in the practice of psychology without a license and committing malpractice; and invasion of privacy. RAC filed a Motion to Dismiss Amended Complaint (# 6), along with a Memorandum of Law in Support (# 7). Plaintiffs responded to the Motion to Dismiss (# 22), and also filed a Motion to Allow Filing Second Amended Complaint (# 23), which includes an additional count based on a violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA). RAC filed a Memorandum in Opposition to Plaintiffs' Motion to Allow Filing of Second Amended Complaint (# 26), arguing that Plaintiffs' proposed ADA claim is meritless. Defendant APT adopted this argument (# 30). Plaintiffs tendered a Reply (# 46), further explaining and justifying their ADA claim. By letter dated July 1, 2002, RAC notified this court that it wished to continue its Motion to Dismiss in spite of Plaintiffs' request to file a second amended complaint.

Defendant Talley filed a Motion to Dismiss Amended Complaint (# 24), and a Memorandum of Law in Support (# 25). Plaintiffs filed a Response to Defendant Talley's Motion to Dismiss (# 45).

Not wanting to be left out (or "in" the lawsuit, as the case may be), APT filed a Motion to Dismiss Amended Complaint (# 32), and a Memorandum in Support (# 33). Additionally, APT adopted (# 31–32) the arguments set forth in Talley's motion to dismiss and memorandum in support and the arguments RAC raised in its motion to dismiss and accompanying

memorandum. Plaintiffs' submitted a Response to APT's Motion to Dismiss (# 44).

After thoughtful analysis, the Magistrate Judge's Report and Recommendation (R & R)(# 60) recommends first denying Plaintiffs' motion to file a Second Amended Complaint because Plaintiffs could not state a claim under the ADA. The R & R also recommends dismissing the FCRA claim as to APT because the employee profiles it generated from the individual responses to the Management Test do not fall under the purview of the FCRA and because APT was not acting as a third-party consumer reporting agency. The R & R also concludes that Plaintiffs cannot state a claim against RAC under the FCRA because RAC was also not acting as a consumer reporting agency. After disposing of the ADA claim and the FCRA claim, the Magistrate Judge recommends that this court decline to exercise supplemental jurisdiction over the state law claims in Plaintiffs' Amended Complaint.

Plaintiffs filed objections to the R & R(# 68), disputing the Magistrate Judge's conclusion about their ADA claim, but not

challenging the FCRA analysis. On that same day, RAC filed an Objection to Recommendation to Decline Jurisdiction Over Plaintiffs' State Law Claims (# 67), arguing that this court has federal diversity jurisdiction over the state law claims and so should rule on the merits of RAC's motion to dismiss those claims, even if the court elects to dismiss the federal claims. This court ordered Plaintiffs to respond, and they did so (# 69), agreeing that diversity jurisdiction exists and tendering a Third Amended Complaint that explicitly pleads diversity should this court find no viable federal claim.

## ANALYSIS

After receiving an objection from either party concerning the Magistrate Judge's R & R, this court must conduct a de novo review to those portions of the R & R in dispute. Fed.R.Civ.P. 72(b); *Kruger v. Apfel,* 214 F.3d 784, 787 (7th Cir.2000).

1. ADA Claim [2]

■ The ADA claim included in Plaintiffs' proposed Second Amended Complaint

**2.** Section 12112 of the ADA provides, in relevant part:

(a) General rule
No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment....

(d) Medical examinations and inquiries
(1) In general
The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries.
(2) Preemployment
(A) Prohibited examination or inquiry
Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a

job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability....
(3) Employment entrance examination
A covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of employment on the results of such examination....
(4) Examination and inquiry
(B) Prohibited examinations and inquiries
A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity....

alleges that Defendants violated the ADA's prohibition against medical examinations and inquiries for job applicants. The Magistrate Judge recommended denying Plaintiffs' request for leave to file an amended complaint because he determined the proposed ADA claim to be without merit. Specifically, he concluded that Plaintiffs must be qualified individuals with disabilities in order to assert a prayer for relief under the ADA. Plaintiffs are not claiming that they are disabled under the statute, but they disagree that the particular provision at issue requires them to be.

In the context of employment, the ADA prohibits discrimination against "a qualified individual with a disability ... in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Concerning medical examinations and inquiries, the statute sets forth the general statement that "[t]he prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries." § 12112(d)(1). The ADA then outlines separate rules governing examinations and inquiries for job applicants who have not received an offer of employment (§ 12112(d)(2)), applicants who have received an offer of employment but have not yet commenced working for the entity (§ 12112(d)(3)), and current employees (§ 12112(d)(4)). For job applicants who have not received an offer of employment, an employer may only ask about the applicant's ability to perform job-related functions, § 12112(d)(2)(B), but may not inquire whether the applicant has a disability, § 12112(d)(2)(A). 29 C.F.R. § 1630.14(a). After extending an offer of employment to an applicant, an employer may condition that offer on the results of a medical examination provided that all

entering employees are subject to the examination and that the results are maintained as confidential medical records. § 12112(d)(3); 29 C.F.R. § 1630.14(b). Once the period of employment has commenced, the employer may not inquire whether an employee has a disability unless the examination or inquiry is "job-related and consistent with business necessity." § 12112(d)(4)(A); 29 C.F.R. § 1630.14(c).

The crucial issue before this court is whether an individual must be a "qualified individual with a disability" in order to bring a claim that an employer required improper or unauthorized medical inquiries. Turning first to case law from the Courts of Appeals for guidance, it appears that the Seventh Circuit has not squarely addressed the issue. In *Murdock v. Washington*, 193 F.3d 510 (7th Cir.1999), the court made a passing reference to § 12112(d), and in dicta noted that the statute "does not require that an individual be disabled to state a claim." *Id.* at 512. Three years later, however, when faced with the question more directly, the court asserted that it had not yet decided the issue, and it declined to do so then. *O'Neal v. City of New Albany*, 293 F.3d 998, 1007 (7th Cir.2002).

Three other circuits have analyzed this issue, and all three have concluded that a plaintiff need not be disabled in order to raise a violation of these ADA provisions. *Cossette v. Minn. Power & Light*, 188 F.3d 964 (8th Cir.1999); *Fredenburg v. Contra Costa County Dept. of Health Servs.*, 172 F.3d 1176 (9th Cir.1999); *Griffin v. Steeltek, Inc.*, 160 F.3d 591 (10th Cir.1998) (§ 12112(d)(2)); *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221 (10th Cir.1997) (§ 12112(d)(4)). These decisions all follow essentially the same reasoning for

their holdings. First, relying on the words of the statute itself, the courts noted that § 12112(d)(1), the general provision regarding medical examinations and inquiries, referred back to § 12112(a), which prohibits discrimination against qualified individuals with disabilities. The other sections of § 12112(d), however, use much broader language. The statute refers to "job applicants" and "employees" rather than again using the more restrictive "qualified individual with a disability." Subsection (1), which incorporates the "qualified individual with a disability" language, is only one of the protections afforded by § 12112(d), and "it is only discrimination itself (and not illegal disclosure) that requires a showing of disability." *Cossette*, 188 F.3d at 969. Accordingly, these courts held that the requirements in (d)(2), (d)(3), and (d)(4) apply to all job applicants and employees, regardless of disability.

Second, the courts found this interpretation of the statute to be superior because it is consistent with the policy behind the medical examination and inquiries provisions. "[P]rotecting only qualified individuals," the *Fredenburg* court reasoned, "would defeat much of the usefulness of those sections." *Fredenburg*, 172 F.3d at 1182. Relying on legislative history, the *Griffin* court recognized that Congress intended to curtail *all* questioning that would identify persons with disabilities. *Griffin*, 160 F.3d at 594. And all three circuits agreed that "[i]t makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." *Roe*, 124 F.3d at 1229 (internal quotation marks and citation omitted).

In addition to the appellate courts, two district courts in circuits that have not addressed this issue have also held that a nondisabled plaintiff may state a cause of action under § 12112(d)(2)-(4). *Pollard v. City of Northwood*, 161 F.Supp.2d 782 (N.D.Ohio 2001); *Mack v. Johnstown Am. Corp.*, 1999 WL 304276 (W.D.Pa.1999). These decisions relied on the circuit court opinions discussed above and supported their holdings with very similar reasoning.

One district court opinion, *Varnagis v. City of Chicago*, 1997 WL 361150 (N.D.Ill. 1997), which both RAC and the Magistrate Judge cited, has answered this question differently. *Varnagis* interprets the plain language of the statute to require plaintiffs bringing claims under § 12112(d) to be qualified individuals with disabilities. The district judge in *Varnagis* specifically relied on the reference in § 12112(d)(1) to subsection (a) which prohibits discrimination against "a qualified individual with a disability." And although §§ 12112(d)(2)-(4) use the terms "job applicants" and "employees," the district judge determined that the statute does not specifically define those terms, and a logical reading of the statute incorporates the general rule set forth in (d)(1) and therefore the narrower definition of who is protected by the statute. *Varnagis*, 1997 WL 361150, at *6–7. Moreover, the court reasoned that the ADA was designed to protect individuals with disabilities, whether real or perceived, and Congress gave no suggestion that it intended the provisions of the ADA to apply to persons without disabilities. *Id.* at *7.

The *Varnagis* opinion, along with RAC and the Magistrate Judge, cites to *Armstrong v. Turner Indus., Ltd.*, 950 F.Supp. 162 (M.D.La.1996), as further support of its conclusion. Although *Armstrong* held that the plaintiff must be a qualified individual with a disability, *id.* at 167, on appeal the Fifth Circuit affirmed the district court, but on a different basis, declining to address the issue of whether a disability is

required under § 12112(d). *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 558 (5th Cir.1998).

Although the reasoning of the Magistrate Judge is not inherently flawed or entirely unsupported, it appears that the great weight of case law supports the opposite conclusion. On de novo review, this court is forced to conclude that, for the reasons articulated by the Eighth, Ninth, and Tenth Circuits, the better interpretation of § 12112(d) does not require that Plaintiffs be qualified individuals with disabilities in order to state a claim. Accordingly, Plaintiffs' addition of an ADA claim to their complaint would not be futile.

RAC also argues that Plaintiffs' ADA claim would be untimely. In response, however, Plaintiffs identified at least one challenged act that occurred within the 300 day period as they calculate it. At this stage in the proceedings, therefore, this court cannot conclude that Plaintiffs' ADA claim is barred by the statute of limitations. Their motion to amend their complaint is granted to the extent that they may raise the ADA claim outlined in their tendered Second Amended Complaint.

### 2. State Law Claims

By allowing Plaintiffs to add an ADA claim to their complaint, the state law claims fall under this court's supplemental jurisdiction, regardless of the diversity jurisdiction issue raised by RAC. Accordingly, this court must review the motions to dismiss those claims filed by Defendants.

Dismissal for failure to state a claim is appropriate only where it is beyond doubt that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Echevarria v. Chicago Title & Trust Co.*, 256 F.3d 623, 625 (7th Cir.2001). In making this determination, this court will accept as true all well-pleaded allegations and will draw all reasonable infer-

ences in favor of Plaintiffs. *Id.* But this court is not obligated to accept "legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir.2002).

#### a. Clinical Psychologist Licensing Act

■ Plaintiffs' Amended Complaint alleges that Defendants' actions "constituted practice of psychology without a license and otherwise constituted malpractice." Defendants argue that this claim, which relies on the Clinical Psychologist Licensing Act, 225 ILCS §§ 15/1–15/28 (CPLA), is untimely.

■ The CPLA, which regulates the practice of clinical psychology in Illinois, 255 ILCS § 15/1, implies a private cause of action for nuisance. *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602, 609–10 (1991). As for the statute of limitations, Illinois courts look to the nature of the injury to determine whether to apply the two-year personal injury limitations period or the residual five-year statute of limitations. *Armstrong v. Guigler*, 174 Ill.2d 281, 220 Ill.Dec. 378, 673 N.E.2d 290, 293 (1996). For CPLA claims, then, courts analyze the type of injury alleged in the complaint to chose between the two-year and the five-year limitations period. *Compare Pavlik v. Kornhaber*, 326 Ill. App.3d 731, 260 Ill.Dec. 331, 761 N.E.2d 175, 189–90 (2001) (applying the two-year statute of limitations because plaintiff's complaint alleged only personal injuries, including depression, anxiety, and general worsening of her psychological condition), *with Sullivan v. Cheshier*, 846 F.Supp. 654, 660 (N.D.Ill.1994) (applying the five-year statute of limitations because plaintiffs claimed no physical harm and alleged only intangible injuries such as loss of companionship and society).

Here, Plaintiffs do not allege any physical harm. Instead, they claim that Defendants are responsible for the embarrassment and humiliation they suffered and the damage done to their careers and future earning capacities. Given that Plaintiffs are not seeking compensation for personal injuries, the five-year residual limitations period applies to their claims under the CPLA. Accordingly, these claims are not time-barred.

b. Mental Health and Developmental Disabilities Confidentiality Act

■ Plaintiffs assert in their amended complaint that Defendants' conduct violated the rights given them by the Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS §§ 110/1–110/17 (MHDDCA). Defendants argue that Plaintiffs cannot state a claim under the MHDDCA because the communications at issue were not made to a therapist in the context of mental health or developmental disability services as required by § 110/3. Citing *People v. Gemeny*, 313 Ill.App.3d 902, 247 Ill.Dec. 71, 731 N.E.2d 844 (2000), Defendants maintain that the purposes of the MHDDCA—to encourage candor between patient and therapist and to provide motivation to seek treatment—are not served by allowing Plaintiffs' claim.

Plaintiffs admit that their MHDDCA claim presents "a novel question of law," but they assert that Defendants' actions may indeed fall under the mandates of the Act. Specifically, they claim that the Management Tests were "psychological tests" and that the profiles APT provided to RAC prescribed personal growth exercises that the employee must undergo if he wanted a management job. The profiles summarized psychological characteristics of the individual employees and then recommended corrective action, a function of the tests that constituted mental health services.

Although Plaintiffs' characterization of the tests and the MHDDCA are indeed novel, it is perhaps possible for them to develop facts that would establish a claim under the Act. It is, therefore, inappropriate to dismiss their claims at this stage in the proceedings.

c. Invasion of Privacy

■ Plaintiffs' Amended Complaint includes an allegation that Defendants' actions violated their right of privacy. Defendants first argue that this claim is barred by the one-year statute of limitations. *See* 735 ILCS 5/13–201.[3] Plaintiffs rely on the continuing violation doctrine to overcome this hurdle, arguing that Defendants perpetually failed to store the Management Test results in a confidential manner and that they continually used the results of the test in making hiring and promoting decisions. It is unclear given the limited record whether the continuing violation doctrine applies to the facts of this case. Even so, Plaintiffs alleged a set of facts that, if further developed, could support a timely claim for invasion of privacy, and so dismissal is inappropriate at this time.

Defendants also maintain that Plaintiffs have failed to state a claim for any of the four categories of invasion of privacy: intrusion upon the seclusion of another, appropriation of name or likeness of another, publicity given to private life, and publicity placing person in false light. *Lovgren v.*

---

**3.** There is some question whether the one-year period in § 5/13–201 applies to intrusion upon the seclusion of another. *See Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill.App.3d 1027, 239 Ill.Dec. 705, 714 N.E.2d 1002, 1007 (1999). But Plaintiffs do not raise this argument, and given the resolution of that claim, there is no need to address the issue now.

*Citizens First Nat'l Bank of Princeton,* 126 Ill.2d 411, 128 Ill.Dec. 542, 534 N.E.2d 987, 988 (1989). Plaintiffs' Amended Complaint merely alleges an invasion of privacy but does not specify on which of the privacy torts they are relying. Their response to RAC's motion to dismiss explicitly eliminates the appropriation tort, but a careful reading of their Amended Complaint reveals that they have stated a claim only for disclosure of private facts.

### (1) Intrusion Upon the Seclusion of Another

■ A claim for intrusion upon the seclusion of another requires proof: (1) of an unauthorized intrusion or prying into the plaintiff's seclusion; (2) that the intrusion was offensive or objectionable to a reasonable man; (3) that the matter upon which the intrusion occurred was private; and (4) that the intrusion caused anguish and suffering. *Acuff v. IBP, Inc.,* 77 F.Supp.2d 914, 924 (C.D.Ill.1999). The key distinction of this privacy tort is that the injury stems from the intrusion itself and not from any publication. *Thomas v. Pearl,* 998 F.2d 447, 452 (7th Cir.1993). The nature of this tort depends on "highly offensive prying into the physical boundaries or affairs of another person." *Lovgren,* 128 Ill.Dec. 542, 534 N.E.2d at 989.

■ Illinois courts are in conflict about whether to recognize the tort of intrusion upon the seclusion of another. *See Benitez,* 239 Ill.Dec. 705, 714 N.E.2d at 1007. This court need not decide whether the Illinois Supreme Court would recognize the tort, however, because Plaintiffs failed to allege sufficient facts that would state a claim for intrusion upon the seclusion of another. Specifically, Plaintiffs did not identify any intrusion into their physical boundaries or affairs. In response to the motion to dismiss, Plaintiffs assert that "when all the facts are placed before this Court the Court will conclude that such type of prying occurred." But their Amended Complaint contains no suggestion of physical intrusion that would place Defendants on notice of this claim. This is particularly true in light of the types of situations that could give rise to this tort: "invading someone's home, illegally searching someone's shopping bag in a store, eavesdropping by wiretapping, peering into the windows of a private home, or making persistent and unwanted telephone calls." *Benitez,* 239 Ill.Dec. 705, 714 N.E.2d at 1006. Plaintiffs' Amended Complaint describes nothing similar, and so Defendants' motion to dismiss this claim is granted.

### (2) Publicity Given to Private Life

■ To state a claim for public disclosure of private facts, Plaintiffs must allege (1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person. *Wynne v. Loyola Univ. of Chicago,* 318 Ill.App.3d 443, 251 Ill.Dec. 782, 741 N.E.2d 669, 676–77 (2000). Defendants argue that Plaintiffs failed to allege publicity because the test results were given only to their immediate supervisors and that the facts were not private facts because Plaintiffs voluntarily took the Management Test knowing how the results would be used.

Plaintiffs' Amended Complaint sufficiently states a claim for public disclosure of private facts. They alleged that the test results were in their personnel files and that the managers were free to distribute the results to anyone, even those who had no business reason for viewing the documents. This allegation is sufficient, at this time, to satisfy the publicity requirement. Also, Plaintiffs dispute that they voluntari-

ly took the test because they maintain that it was required by RAC for anyone wishing to be considered for a management position. Again, although not factually developed, this contention is sufficient to survive a motion to dismiss for failure to state a claim.

### (3) Publicity Placing Person in False Light

■■■■■ A claim of false light invasion of privacy requires allegations that (1) Defendants' actions placed Plaintiffs in a false light before the public; (2) the false light would be highly offensive to the reasonable person; and (3) Defendants acted with actual malice. *Schivarelli v. CBS, Inc.*, 333 Ill.App.3d 755, 267 Ill.Dec. 321, 776 N.E.2d 693, 700–01 (2002). Defendants again dispute that the test results were placed "before the public," and they also assert that Plaintiffs failed to allege any false statement. It appears that Defendants are correct. The Amended Complaint does not contain any suggestion that the test results were fabricated or that any statement in the employee profile was false. In responding to the motion, Plaintiffs failed to identify any portion of their Amended Complaint that would state a claim for false light privacy. Accordingly, the motion to dismiss is granted to the extent Plaintiffs were seeking recovery for a false light privacy violation.

### 3. Personal Jurisdiction

■■■■■ In addition to a motion to dismiss Plaintiffs' claims on the merits, both Defendant Talley and Defendant APT asked to be dismissed from the lawsuit on the basis of personal jurisdiction. In ruling on a motion to dismiss for want of personal jurisdiction, this court must accept as true all undisputed factual allegations, must resolve factual disputes in favor of Plaintiffs, and may consider affidavits submitted to the court. *Int'l Truck & Engine Corp. v. Dow–Hammond Trucks Co.*, 221 F.Supp.2d 898, 901 (N.D.Ill.2002). To survive this motion, Plaintiffs need only assert a prima facie case of personal jurisdiction, *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002), and the motion will be denied if Plaintiffs allege "sufficient facts to support a reasonable inference" that Defendants can be subjected to this court's personal jurisdiction, *Arnold v. Goldstar Fin. Sys., Inc.*, 2002 WL 1941546, at *1 (N.D.Ill.2002).

■■■■■ A federal court may exercise personal jurisdiction provided that the requirements of due process are satisfied and that the defendant is amenable to service of process. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *United States v. De Ortiz*, 910 F.2d 376, 381–82 (7th Cir.1990). Due process requires that Defendants have "minimum contacts" with the forum, which in a federal question case, is the United States as a whole. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001); *United Rope Distribs., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir.1991). Neither Talley nor APT dispute that they have sufficient minimum contacts with the United States, and so the due process element of personal jurisdiction is satisfied.

■■■ Rule 4 of the Federal Rules of Civil Procedure governs whether a defendant is amenable to service of process. Specifically, Rule 4(k) provides that proper service establishes jurisdiction over a defendant "(A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or ... (D) when authorized by a statute of the United States." Fed. R.Civ.P. 4(k). The ADA does not provide

for nationwide service of process, *Bassett v. Sinterloy Corp.*, 2002 WL 1888477, at *2 (N.D.Ill.2002); *Steir v. Girl Scouts of the USA*, 218 F.Supp.2d 58, 62 n. 2 (D.N.H. 2002), and so Defendants are amenable to service only if they would be subject to the jurisdiction of an Illinois state court. *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201–02 (7th Cir.1997).

An analysis of Illinois personal jurisdiction rules requires a discussion of the Illinois longarm statute, the Illinois Constitution, and the United States Constitution. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997). First, the Illinois long-arm statute, 735 ILCS 5/2–209, lists permitted grounds of jurisdiction and includes a catch-all subsection that permits a court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2–209(c). This provision allows courts to exercise personal jurisdiction in a situation not enumerated specifically in the statute, as long as constitutional requirements are satisfied. *Hyatt*, 302 F.3d at 714–15.

Second, the Illinois Constitution allows for an exercise of jurisdiction when it is "fair, just and reasonable." *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (1990). Despite the Illinois Supreme Court's holding that this inquiry is different from that under the federal due process clause, the analysis essentially collapses into the discussion of the United States Constitution. *Hyatt*, 302 F.3d at 715–16.

■■■■ Third, the federal constitution requires that defendants have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation

marks and citation omitted). The precise meaning of that standard varies depending upon whether the plaintiff is asserting general or specific jurisdiction. *RAR*, 107 F.3d at 1277. General jurisdiction over a defendant exists only when that defendant has "continuous and systematic" business contacts with the forum. *Haemoscope Corp. v. Pentapharm AG*, 2002 WL 31749195, at *4 (N.D.Ill.2002). In contrast, Plaintiffs here allege specific jurisdiction, which requires that Defendants have sufficient contacts with the forum and that the litigation be related to or arise out of those contacts. *Id; Wright v. Domain Source, Inc.*, 2002 WL 1998287, at *3 (N.D.Ill.2002).

■■■■ To assert specific jurisdiction, this court must determine whether Defendants intentionally established minimum contacts with Illinois such that personal jurisdiction would be fair and reasonable. *RAR*, 107 F.3d at 1277. A key inquiry is whether Defendants should "reasonably anticipate being haled into court" in Illinois because they "purposefully avail[ed]" themselves of the benefit of Illinois laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotations and citations omitted). And for specific jurisdiction, the claims of Plaintiffs must arise out of or be related to Defendants' contacts with Illinois. *RAR*, 107 F.3d at 1277.

(1) Talley

■■■■ Talley asserts that the fiduciary shield doctrine prevents this court from exercising personal jurisdiction over him. The Illinois Supreme Court explicitly adopted the fiduciary shield doctrine in *Rollins*, limiting the reach of the long-arm statute to protect nonresidents from being haled into Illinois courts based solely on contacts related to their employment. The court recognized that "it is unfair to force

an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Rollins,* 152 Ill.Dec. 384, 565 N.E.2d at 1317. Talley avers in his affidavit that he has lived and worked in Texas since 1982, and he estimates that during his time as the Chairman and CEO of RAC, he spent "approximately one day, every two years, in Illinois on RAC business." Talley also asserts that he has had no contact with Illinois in any individual, personal capacity. Thus, he maintains he should not be subjected to the jurisdiction of this court.

■■■ In response, Plaintiffs claim that the fiduciary shield doctrine does not apply to high-ranking officers or directors of corporations. In making that argument, however, Plaintiffs misstate the case law on this issue. Some Illinois courts have refused to apply the fiduciary shield doctrine to nonresident officers and directors of *Illinois* corporations, reasoning that by accepting the position they chose to avail themselves of the protections of Illinois law and they knew that business transactions would likely occur in Illinois. *See, e.g., Int'l Bus. Machs. Corp. v. Martin Prop. & Cas. Ins. Agency Inc.,* 281 Ill. App.3d 854, 217 Ill.Dec. 197, 666 N.E.2d 866, 871 (1996); *Morse v. E & B Coal Co., Inc.,* 261 Ill.App.3d 738, 199 Ill.Dec. 597, 634 N.E.2d 436, 442–43 (1994). Additionally, courts have elected not to apply the fiduciary shield doctrine when officers and directors of corporations were also shareholders. *See, e.g., Plastic Film Corp. of Am., Inc. v. Unipac, Inc.,* 128 F.Supp.2d 1143, 1147 (N.D.Ill.2001) (collecting cases). But there is not, as Plaintiffs maintain, an across-the-board bar to applying the fiduciary shield to any high-ranking officer or director. *See Alpert v. Bertsch,* 235 Ill. App.3d 452, 176 Ill.Dec. 333, 601 N.E.2d

1031, 1037 (1992); *Hartigan v. Kennedy,* 215 Ill.App.3d 880, 159 Ill.Dec. 438, 576 N.E.2d 107, 114–15 (1991); *Burnhope v. Nat'l Mortgage Equity Corp.,* 208 Ill. App.3d 426, 153 Ill.Dec. 398, 567 N.E.2d 356, 363 (1990).

Because Plaintiffs make no allegation that RAC was an Illinois corporation, that Talley was a shareholder, or that he had contacts with Illinois that were not solely in his official capacity for RAC, Talley is entitled to the protection of the fiduciary shield doctrine. His motion to dismiss for want of personal jurisdiction is granted.

(2) APT

■■■ APT, a Kansas corporation with its principal place of business in Kansas, argues that it has insufficient contacts with Illinois to justify personal jurisdiction. Specifically, APT argues that it does not have an Illinois address or phone number, any employees in Illinois, or an office or agent in Illinois. The president of APT averred in his affidavit that APT does not advertise or solicit customers in Illinois, nor do its employees travel to Illinois to conduct business. APT claims that merely sending the tests to RAC, scoring the tests, and mailing the results back to RAC does not constitute "minimum contacts."

Although APT's relationship with Illinois would be insufficient to warrant general jurisdiction, it is enough for this court to exercise specific jurisdiction over APT. APT mailed the tests to RAC in Illinois. After receiving the test results back from RAC, APT tabulated the score and created a written psychological profile for each individual, which it sent to RAC management (not in Illinois). This lawsuit arises directly out of those contacts with the state, and it is not unreasonable for APT to anticipate being haled into court in Illinois knowing that its work product was

being distributed to employees in this state.

APT's motion to dismiss for want of jurisdiction is denied.

## CONCLUSION

IT IS THEREFORE ORDERED:

(1) RAC's Motion to Dismiss Amended Complaint (# 6) is GRANTED in part and DENIED in part. Plaintiffs' FCRA claim is dismissed. Plaintiffs' invasion of privacy claim is dismissed except to the extent that Plaintiffs are raising a claim based on public disclosure of private facts.

(2) Plaintiffs' Motion to Allow Filing Second Amended Complaint (# 23) is GRANTED, but the above analysis applies to the claims raised in the Second Amended Complaint.

(3) Defendant Talley's Motion to Dismiss Amended Complaint (# 24) is GRANTED.

(4) Defendant APT's Motion to Dismiss Amended Complaint (# 32) is DENIED.

(5) This case is referred to the Magistrate Judge for further proceedings.