337 F.Supp.2d 298 (2004)
In re LERNOUT & HAUSPIE SECURITIES LITIGATION
Gary B. Filler, et al.,
v.
Jo Lernout, et al.
Stonington Partners, Inc., et al.,
v.
Carl L. Dammekens, et al.,
Paul G. Bamberg, et al.,
v.
Jo Lernout, et al.,
Janet Baker, et al.,
v.
KPMG LLP, et al.
No. CIV.A.00-11589-PBS, No. CIV.A.02-10302-PBS, No. CIV.A.02-10303-PBS, No. CIV.A.02-10304-PBS.
United States District Court, D. Massachusetts.
September 8, 2004.
*299 *300 *301 *302 Amy Beth Abbott, Kirkpatrick & Lockhart, LLP, Boston, MA, for SG Cowen Securities Corporation, Defendant.
Vincent M. Amoroso, Posternak, Blankstein & Lund, Boston, MA, for KPMG Belgium, Paul Behets, Consolidated Defendants.
Jennifer Ancona Semko, Baker & McKenzie, Washington, DC, for Mercator & Noordstar NV, Consolidated Defendant.
Bruce A. Baird, Covington & Burling, Washington, DC, for Microsoft Corporation, Defendant.
Jeffrey Barist, Milbank, Tweed, Hadley & McCloy, New York City, for Milbank, Tweed, Hadley & McCloy LLP, Interested Party.
Jeffrey C Block, Berman DeValerio Pease Tabacco Burt & Pucillo, Boston, MA, for Gabriel, Inc. Pension and Profit Sharing Plan, Anthony Drummond, Attilio Po, Daniel J. Perrington, Gary C. Downey, Hans A. Quaak, Karl Leibinger, Larry A. Rosenmann, Lee Herskowitz, Matthias Weis, Samer M. Ali, Stephen N. Maskaleris, Steven Roskin, Class Plaintiffs, All Plaintiffs, Plaintiffs.
James P. Bonner, Shalov Stone & Bonner, New York City, for Sandra Balan, Plaintiff.
Curtis L. Bowman, Cauley Geller Bowman & Coates, LLP, Little Rock, AR, for Sandra Balan, Plaintiff.
David H. Braff, Sullivan & Cromwell, New York City, for KPMG UK, Consolidated Defendant.
Jasmeet Kaur Caberwal, Kirkpatrick & Lockhart LLP, New York City, for SG Cowen Securities Corporation, Defendant.
Michael P. Carroll, Davis, Polk & Wardwell, New York City, for KPMG LLP, Defendant.
Gene Cauley, Cauley & Geller LLP, Little Rock, AR, for Hans A. Quaak, Consolidated Plaintiff.
Steven E. Canley, Cauley Geller Bowman & Coates, Little Rock, AR, for Attilio Po, Karl Leibinger, Sandra Balan, Plaintiffs.
Donald Chase, Morrison Cohen Singer & Weinstein, LLP, New York City, for L & H Investment Company N.V., Nico Willaert, Pol Hauspie, Defendants.
Andre K. Cizmarik, Solomon Zauderer, Ellenhorn Frischer etal, New York City, for Paul Behets, Consolidated Defendant.
Robert M. Cohen, Cohen & Fierman, LLP, Boston, MA, for Mercator & Noordstar NV, Consolidated Defendant.
*303 Gus P. Coldebella, Goodwin Procter, LLP, Boston, MA, for Jo Lernout, Consolidated Defendant.
Michael A. Collora, Dwyer & Collora, LLP, Boston, MA, for L & H Investment Company N.V., Defendant.
Michael P. Connolly, Murtha Cullina LLP, Boston, MA, for Ellen Spooren, Defendant.
Nicholas W.C. Corson, Hogan & Hartson, LLP, New York City, for KPMG Belgium, Consolidated Defendant.
Rachelle L. DeGregory, Morrison Cohen Singer & Weinstein, LLP, New York City, for L & H Investment Company N.V., Nico Willaert, Defendants.
Glen DeValerio, Berman DeValerio Pease Tabacco Burt & Pucillo, Boston, MA, for Sandra Balan, Gabriel, Inc. Pension and Profit Sharing Plan, Anthony Drummond, Attilio Po, Daniel J. Perrington, Gary C. Downey, Hans A. Quaak, Karl Leibinger, Larry A. Rosenmann, Lee Herskowitz, Matthias Weis, Samer M. Ali, Stephen N. Maskaleris, Steven Roskin, Consolidated Plaintiffs.
Michael D. Donovan, Donovan Searles, LLC, Philadelphia, PA, for Anthony Drummond, Consolidated Plaintiff.
Alicia M. Duff, Bernstein, Litowitz, Berger & Grossmann LLP., San Diego, CA, for Attilio Po, Daniel J. Perrington, Hans A. Quaak, Karl Leibinger, Stephen N. Maskaleris, Consolidated Plaintiffs.
Thomas L. Earp, Earp Cohn P.C., Westmont, NJ, for Anthony Drummond, Consolidated Plaintiff.
Theodore Edelman, Sullivan & Cromwell, for KPMG UK, Consolidated Defendant.
Patrick T. Egan, Berman DeValerio Pease Tabacco Burt & Pucillo, Boston, MA, for All Plaintiffs, Class Plaintiffs, Sandra Balan, Plaintiffs.
David N. Ellenhorn, Proskauer Rose LLP, New York City, for Paul Behets, Consolidated Defendant.
Thomas W. Evans, Cohen & Fierman, LLP, Boston, MA, for Mercator & Noordstar NV, Consolidated Defendant.
Anthony M. Feeherry, Goodwin Procter, LLP, Boston, for Jo Lernout, Consolidated Defendant.
William Fenrich, Davis Polk & Wardwell, New York City, for KPMG LLP, Defendant.
Janet B. Fierman, Cohen & Fierman, LP, Boston, MA, for Mercator & Noordstar NV, Consolidated Defendant.
Marvin L. Frank, Murray, Frank & Sailer, New York City, for Sandra Balan, Plaintiff.
Robert P. Frutkin, Office of Bernard M. Gross, PC, Philadelphia, PA, for Irene Godfrey, Marguerite J. Cammann, Martin E. Kofman, Michael Wytanis, Stephen N. Maskaleris, Sylvia B. Piven, Thomas H. Bown, II, Consolidated Plaintiffs.
Iris Gafni-Kane, Davis Polk & Wardwell, New York City, for KPMG LLP, Defendant.
Thomas J. Gallitano, Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Boston, MA, for Dirk Cauwelier, Marc DePauw, Defendants.
Paul J. Geller, Cauley Geller Bowman & Rudman LLP, Boca Raton, FL, for Attilio Po, Hans A. Quaak, Karl Leibinger, Matthias Weis, Consolidated Plaintiffs.
Victoria Milda Genys, Kirkpatrick & Lockhart, Boston, MA, for SG Cowen Securities Corporation, Defendant.
Edward P. Gilbert, for Nico Willaert, Pol Hauspie, Defendants.
*304 John A.D. Gilmore, Piper Rudnick LLP, Boston, for Bernard Vergnes, Consolidated Defendant.
Teresa A. Gonsalves, Solomon, Zauderer Ellenhorn, Frischer & Sharp, New York City, for Paul Behets, Consolidated Defendant.
Andrew Good, Good & Cormier, Boston, MA, for Louis H. Verbeke, Defendant.
Philip L. Graham, Jr., Sullivan & Cromwell, New York City, for KPMG UK, Consolidated Defendant.
Bernard M. Gross, Law Offices of Bernard M. Gross, P.C., Philadelphia, PA, for Marguerite J. Cammann, Consolidated Plaintiff.
Deborah R. Gross, Law Office of Bernard M. Gross, PC, Philadelphia, PA, for Marguerite J. Cammann, Consolidated Plaintiff.
Jonathan I. Handler, Day, Berry & Howard LLP, Boston, for Microsoft Corporation, Defendant.
Bradley A. Harsch, Sullivan & Cromwell, New York City, for KPMG UK, Consolidated Defendant.
Douglas W. Henkin, Milbank, Tweed, Hadley & McCloy, New York City, for Milbank, Tweed, Hadley & McCloy LLP, Interested Party.
Michael L. Hirschfeld, Milbank, Tweed, Hadley & McCloy, New York City, for Milbank, Tweed, Hadley & McCloy LLP, Interested Party.
Tara J. Holubar, Dickstein Shapiro Morin & Oshinsky, LLP, Washington, DC, for Ellen Spooren, Defendant.
William D. Iverson, Covington & Burling, Washington, DC, for Microsoft Corporation, Defendant.
Gordon M. Jones, Nixon Peabody, LLP, Boston, for Pol Hauspie, Defendant.
Robert J. Kaler, Gadsby & Hannah LLP, MA, for Flanders Language Valley Fund N.V., Consolidated Defendant.
David C. Katz, Weiss & Yourman, New York City, for Gerhard Heitmann, Interested Party.
Emily F. Klineman, Ropes & Gray LLP, Boston, MA, for KPMG UK, Consolidated Defendant.
Sean C. Knowles, Davis, Polk & Wardwell, New York City, for KPMG LLP, Defendant.
Michael G. Lange, Berman DeValerio Pease Tabacco Burt & Pucillo, Boston, MA, for Sandra Balan, Gabriel, Inc. Pension and Profit Sharing Plan, Anthony Drummond, Attilio Po, Daniel J. Perrington, Gary C. Downey, Hans A. Quaak, Karl Leibinger, Larry A. Rosenmann, Lee Herskowitz, Matthias Weis, Samer M. Ali, Stephen N. Maskaleris, Steven Roskin, Consolidated Plaintiffs.
Kevin J. Lesinski, Seyfarth Shaw, LLP, Boston, MA, for KPMG LLP, Defendant.
Jason A. Levine, Covington & Burling, Washington, DC, for Microsoft Corporation, Defendant.
Richard A. Lockridge, Lockridge, Grindal, Nauen & Holstein, Minneapolis, MN, for Matthias Weis, Consolidated Plaintiff.
Erik Lund, Posternak, Blankstein & Lund, Boston, MA, for KPMG Belgium, Paul Behets, Consolidated Defendants.
Ellen D. Marcus, Debevoise & Plimpton, Washington, DC, for Dirk Cauwelier, Fernand Cloet, Gerard VanAcker, Hubert Detremmerie, Jan Coene, Marc DePauw, Defendants.
Michael T. Matraia, Berman DeValerio Pease Tabacco Burt & Pucillo, Boston, for Class Plaintiffs, Plaintiff.
Amy M. McNamer, Zuckerman Spaeder LLP, Washington, DC, for Louis H. Verbeke, Defendant.
*305 Douglas H. Meal, Ropes & Gray LLP, Boston, MA, for KPMG UK, Consolidated Defendant.
Arneld P. Messing, Choate, Hall & Stewart, Boston, MA, for KPMG LLP, Defendant.
John B. Missing, Debevoise & Plimpton, Washington, DC, for Dirk Cauwelier, Fernand Cloet, Gerard VanAcker, Hubert Detremmerie, Jan Coene, Marc DePauw, Defendants.
Julian J. Moore, Davis Polk & Wardwell, New York City, for KPMG LLP, Defendant.
William R. Moorman, Craig & Macauley, P.C., Boston, MA, for Gaston Bastiaens, Defendant.
Megan Elizabeth Murray, Kirkpatrick & Lockhart LLP, New York City, for SG Cowen Securities Corporation, Defendant.
Kirsten M. Nelson, Piper Rudnick LLP, Boston, MA, for Bernard Vergnes, Consolidated Defendant.
Eric Neyman, Gadsby & Hannah LLP, Boston, for Flanders Language Valley Fund N.V., Consolidated Defendant.
Diem-Suong T. Nguyen, Davis Polk & Wardwell, New York City, for KPMG LLP, Defendant.
Gerald A. Novack, Kirkpatrick & Lockhart, New York City, for SG Cowen Securities Corporation, Defendant.
David M. Osborne, Dwyer & Collora, LLP, Boston, MA, for L & H Investment Company N.V., Defendant.
Brian E. Pastuszenski, Testa, Hurwitz & Thibeault, LLP, Boston, for Francis Vanderhoydonck, Consolidated Defendant.
David A. Piedra, Morrison Cohen Singer & Weinstein, LLP, New York City, for L & H Investment Company N.V., Pol Hauspie, Defendants.
Barbara A. Podell, Savett, Frutkin, Podell & Ryan, P.C., Philadelphia, PA, for Thomas H. Bown, II, Consolidated Plaintiff.
John W. Polk, Baker & McKenzie, Washington, DC, for Mercator & Noordstar NV, Consolidated Defendant.
John A. Redmon, Hogan & Hartson, LLP, New York City, for KPMG Belgium, Consolidated Defendant.
Kenneth A. Ricken, Shalov Stone & Bonner, New York City, for Hans A. Quaak, Consolidated Plaintiff.
Christopher F. Robertson, Seyfarth Shaw, LLP, Boston, MA, for Francis Vanderhoydonck, Consolidated Defendant.
Patrick L. Rocco, Shalov, Stone & Bonner, New York City, for Hans A. Quaak, Karl Leibinger, Consolidated Plaintiffs.
Lisa J. Rodriguez, Rodriguez & Richards, LLC, Haddonfield, NJ, for Anthony Drummond, Consolidated Plaintiff.
Frank Rozzano, Dickstein Shapiro Morin & Oshinsky, LLP, Washington, DC, for Ellen Spooren, Defendant.
Steven M. Salky, Zuckerman Spaeder LLP, Washington, DC, for Louis H. Verbeke, Defendant.
George A. Salter, Hogan & Hartson, LLP, New York City, for KPMG Belgium, Consolidated Defendant.
Reshma M. Saujani, Davis Polk & Wardwell, New York City, for KPMG LLP, Defendant.
Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, PA, for Gerhard Heitmann, Interested Party.
Stuart H. Savett, Savett Frutkin Podell & Ryan, PC, Philadelphia, PA, for Thomas H. Bown, II, Consolidated Plaintiff.
Paul W. Schmidt, Covington & Burling, Washington, DC, for Microsoft Corporation, Defendant.
*306 David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Anthony Drummond, Consolidated Plaintiff.
Lee S. Shalov, Shalov Stone & Bonner LLP, New York City, for Hans A. Quaak, Karl Leibinger, Consolidated Plaintiff.
Sara Jane Shanahan, Griesinger, Tighe & Maffei, LLP, Boston, for Alex Vieux, Consolidated Defendant.
Jonathan Shapiro, Stern, Shapiro, Weissberg & Garin, Boston, for Gerhard Heitmann, Interested Party.
Thomas G. Shapiro, Shapiro Haber & Urmy LLP, Boston, MA, for Thomas H. Bown, II, Consolidated Plaintiff.
Robert P. Sherman, Nixon Peabody LLP (BOS), Boston, for Pol Hauspie, Defendant.
William Shields, Day, Berry & Howard, Boston, MA, for Microsoft Corporation, Defendant.
Michael L. Simes, Davis Polk & Wardwell, New York City, for KPMG LLP, Defendant.
Louis M. Solomon, Proskauer Rose LLP, New York City, for Paul Behets, Consolidated Defendant.
Jay R. Speyer, Morrison Cohen Singer & Weinstein, LLP, New York City, for Nico Willaert, Pol Hauspie, Defendants.
Nicole Robbins Starr, Berman DeValerio Pease Tobacco Burt & Pucillo, Boston, MA, for Class Plaintiffs, Plaintiff.
Amy Stoken-Dunn, Davis Polk & Wardwell, New York City, for KPMG LLP, Defendant.
Michael J. Stone, Peabody & Arnold LLP, Boston, for KPMG Belgium, Paul Behets, Consolidated Defendants.
Ralph M. Stone, Shalov Stone & Bonner LLP, New York City, for Hans A. Quaak, Karl Leibinger, Consolidated Plaintiffs.
Jennifer A. Sullivan, Shalov Stone & Bonner, LLP, New York City, for Class Plaintiffs, Plaintiff.
Herbert Thomas, Debevoise & Plimpton, Washington, DC, for Dirk Cauwelier, Fernand Cloet, Gerard VanAcker, Hubert Detremmerie, Jan Coene, Marc DePauw, Defendants.
Daniel P. Tighe, Griesinger, Tighe & Maffei, LLP, Boston, for Alex Vieux, Consolidated Defendant.
W. Todd Ver Weire, Cauley Geller Bowman & Coates, LLP, Little Rock, AR, for Sandra Balan, Plaintiff.
Stephen Wald, Craig & Macauley, P.C., Boston, MA, for Gaston Bastiaens, Defendant.
Sarah E. Walters, Nutter, McClennen & Fish, LLP, Boston, MA, for Jo Lernout, Consolidated Defendant.
Peter D. Weinstein, Morrison Cohen Singer & Weinstein, LLP, New York City, for L & H Investment Company N.V., Defendant.
Joseph H. Weiss, Weiss & Yourman, New York City, for Gerhard Heitmann, Interested Party.
Franklin R. Weissberg, Morrison Cohen Singer & Weisstein, LLP, New York City, for L & H Investment Company N.V., Defendant.
Stephanie G. Wheeler, Sullivan & Cromwell, New York City, for KPMG UK, Consolidated Defendant.
Roger E Zuckerman, Zuckerman Spaeder LLP, Washington, DC, for Louis H. Verbeke, Defendant.
Jack I. Zwick, Weiss & Yourman, New York City, for Gerhard Heitmann, Interested Party.

*307 ORDER
SARIS, District Judge.
Order entered adopting Report and Recommendation re: Motion to Dismiss filed by Flanders Language Valley Fund N.V. Action on motion: denied. "After a review of the objections, I adopt the well-reasoned Report and Recommendation."
REPORT AND RECOMMENDATION ON DEFENDANT FLANDERS LANGUAGE VALLEY FUND C.V.A.'S MOTION TO DISMISS (# 199 in 00-CV-11589, # 108 IN 00-CV-10302, # 86 IN 02-CV-10303, # 93 IN 02-CV-10304)
COLLINGS, United States Magistrate Judge.

I. Introduction
Defendant Flanders Language Valley C.V.A. ("FLV")[1] has filed a Motion to Dismiss for Lack of Personal Jurisdiction (# 199), along with a supporting brief (# 200). After conducting some limited discovery, the Class Plaintiffs[2] filed a Memorandum of Law in Opposition to Defendant Flanders Language Valley Fund's Motion to Dismiss for Lack of Personal Jurisdiction (# 634) along with a supporting Declaration of Patrick T. Egan (# 636). Additionally, the Filler, Stonington, Baker and Bamberg Plaintiffs (the so-called "Transactional Plaintiffs") filed a Joint Opposition to FLV Fund's Argument in Its Motion to Dismiss that This Court Lacks Personal Jurisdiction (# 336 in 02-CV-10302; # 317 in 02-CV-10303; # 352 in 02-CV-10304)[3]. In response, FLV filed a Reply Brief in Support of Motion to Dismiss for Lack of Personal Jurisdiction (# 656). On February 27, 2004, the Court held a hearing on FLV's motion to dismiss. The motion is now in a posture for resolution. For the reasons discussed below, I will recommend that FLV's motion to dismiss be denied.

II. Factual Background[4]
FLV has moved to dismiss the complaints against it on the ground that inter alia the Court lacks both general and specific jurisdiction over FLV.[5] In short, FLV, a Belgian venture capital fund, argues that the exercise of personal jurisdiction over it is not authorized by the nationwide contacts test or the Massachusetts Long Arm Statute and would violate the Federal Due Process Clause because FLV does not *308 have sufficient minimum contacts with Massachusetts. (See generally # 200, pp. 18-21; # 656, pp. 2-3)
The Complaint, however, alleges in pertinent part that FLV and others set up thirty companies called Language Development Companies ("LDCs") or Cross Language Development Companies ("CLDCs") which purported to license millions of dollars of software from Lernout & Hauspie ("L & H")[6]. (# 96, ¶ 7) The LDCs and CLDCs were actually sham companies formed by parties related to L & H. (Id. at ¶¶ 175-77) L & H improperly recorded the revenue it received from the LDCs and CLDCs that FLV helped to create. (Id. at ¶ 7)
The Complaint further alleges that FLV offered funding to various U.S. companies as a quid pro quo for such companies' agreements to purchase L & H software so that L & H could improperly report the revenue from such agreements. (Id. at ¶ 122) Indeed, FLV invested in several companies that in turn entered into software licensing agreements with L & H. (# 635, p. 3)
While FLV points out that it has no officers, directors or employees of its own, the plaintiffs explain that FLV acts solely through its agent and "statutory manager", Flanders Language Valley Management N.V. ("FLV Management"). (# 635, p. 4) According to the plaintiffs, FLV Management, as statutory manager of FLV, has "full control over the daily operations" of FLV, including keeping its records, reviewing investment proposals, conducting due diligence and making investment decisions for FLV. (Id.) Moreover, "the officers and directors of FLV Management regularly acted and held themselves out as the officers and directors of FLV...." (Id. at pp. 4-5) For example, Phillip Vermeulen, the CEO of FLV Management, regularly signed documents sent to the U.S. as the "Managing Director" of FLV. (Id. at p. 5)
In addition, FLV Management set up offices in Massachusetts and California on behalf of FLV, offices that were run under the name of FLV Management USA, Inc. ("FLV-USA") (Id. at pp. 5-6) FLV Management sent one Philip Vercruyssen ("Vercruyssen") to the U.S. as a full-time employee, where he became the head of FLV-USA. (Id. at p. 6)
The plaintiffs assert that FLV-USA was the U.S. resident agent of FLV, that it was formed as a subsidiary of FLV Management and that it was completely controlled by FLV Management. (# 635, p. 6) Moreover, say the plaintiffs, FLV-USA depended entirely on FLV Management for its funding and had only one employee, Vercruyssen, who had worked previously for FLV Management and who took direction from the CEO of FLV Management. (Id. at p. 7) In sum, "FLV-USA's sole purpose was to act as FLV['s]...agent in the United States." (Id.)
Given the interrelationship among FLV, FLV Management and FLV-USA, the plaintiffs point to the "overwhelming number of continuous and systematic contacts with the United States" on the part of FLV. (Id. at p. 8) Such contacts included: "operating and maintaining offices and leasing property here, making substantial investments in [at least 24] U.S. companies..., actively participating in the management of those U.S. companies, making numerous appearances in U.S. legal and regulatory proceedings, and maintaining *309 banking and investment accounts in the U.S." (Id.)
Not surprisingly, FLV strongly disagrees with the plaintiffs' depiction of FLV and its supposed contacts with the U.S. Specifically, FLV maintains that FLV Management is a totally separate entity and that while, at one time, FLV-USA had offices in the U.S., FLV's and FLV Management's offices are located exclusively in Belgium. (# 656, p. 1) Moreover, FLV's shares are listed only on the European Association of Securities Dealers Automated Quotation System, FLV is not publicly traded outside Europe and is not permitted to list or trade its shares on any U.S. exchange or to solicit investors in the U.S. (Id.)
In this case, the plaintiffs have brought claims against FLV under the federal Securities and Exchange Act, and the Transactional Plaintiffs have brought claims alleging that FLV aided and abetted common law fraud.[7] Thus, the Transactional Plaintiffs, who are bringing for the most part only state law claims, address in their Joint Oppostion [sic] to FLV Fund's Argument in its Motion to Dismiss that this Court Lacks Personal Jurisdiction those contacts by FLV that are specific to Massachusetts. For example, say the Transactional Plaintiffs, FLV Management and FLV USA "maintained offices in Massachusetts, leased real property for its employees' residences in Massachusetts, held business meetings with L & H and with other companies in Massachusetts and invested FLV's funds in companies located in Massachusetts." (# 336, p. 3) Additionally, FLV held meetings in Massachusetts, and various employees of FLV Management and FLV-USA visited and worked at FLV's U.S. office. (# 336, p. 7)

III. Standard of Review
"On a motion to dismiss for want of in personam jurisdiction,... the plaintiff ultimately bears the burden of persuading the court that jurisdiction exists." Massachusetts School of Law at Andover, Inc. v. American Bar Assoc., 142 F.3d 26, 34 (1 Cir., 1998). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, ... the `prima facie' standard governs...." United States v. Swiss American Bank, Ltd., 274 F.3d 610, 618 (1 Cir., 2001) "The prima facie showing must be based upon evidence of specific facts set forth in the record." Id. at 619 (internal quotations omitted). A plaintiff cannot rely only on allegations in its complaint but must rely on "properly supported proffers of evidence." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1 Cir., 1992). "[I]n evaluating whether the prima facie standard has been satisfied, the district court is not acting as a factfinder; rather it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." Swiss American Bank, 274 F.3d at 619 (internal citations and quotations omitted). The court may also "consider facts offered by the defendant, but only to the extent that they are uncontradicted." Steir v. Girl Scouts of the USA, 218 F.Supp.2d 58, 62 (D.N.H., 2002) (internal citations and quotations omitted).

IV. Analysis
A. General Principles
As mentioned above, the claims brought against FLV are claims under the federal securities laws and state law claims for aiding and abetting fraud. Thus, as for the plaintiffs who have brought federal claims, the jurisdictional inquiry focuses on whether FLV had sufficient contacts with *310 the United States as a whole, rather than with just Massachusetts, such that this Court can exercise jurisdiction over FLV.[8] Under this so-called nationwide contacts test, the question is "whether the party has sufficient contacts with the United States, not any particular state." United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1330 (6 Cir., 1993)(quoting Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1315 (9 Cir., 1985), rev'd on other grounds, Holmes v. Securities Investor Protection Corp. 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)); see also United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1085 (1 Cir., 1992)("Pleasant St. I")(Under the nationwide contacts test, "the Constitution requires only that the defendant have the requisite `minimum contacts' with the United States, rather than with the particular forum state....").
The nationwide service of process rule is contained in Fed.R.Civ.P. Rule (4)(k)(1)(D) which sets out, in relevant part, that: "(1) Service of a summons ... is effective to establish jurisdiction over the person of a defendant...(D) when authorized by a statute of the United States." See also Miller Pipeline Corp. v. British Gas, 901 F.Supp. 1416, 1420 (S.D.Ind., 1995)("Personal jurisdiction generally is determined in accordance with Rule 4 of the Federal Rules of Civil Procedure....In particular, Fed.R.Civ.P. 4(k)(1)(D) provides that service of process `is effective to establish jurisdiction over the person of a defendant ... when authorized by a statute of the United States.'"). In the instant case, the United States statute authorizing nationwide service of process is Section 27 of the Securities Exchange Act which states that:
Any suit or action to enforce any liability or duty created by this chapter ... or to enjoin any violation of such chapter..., may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.
Title 15 U.S.C. § 78aa.[9]See also Equitable Bank v. Finn, 671 F.Supp. 374, 377 (D.Md., 1987)("Section 27 of the Exchange Act has been construed as permitting nationwide service of process over a defendant.").
As for the plaintiffs who have asserted only state law claims, the Court must determine whether FLV's contacts with Massachusetts (as opposed to the U.S. as a whole) satisfy the Massachusetts Long Arm Statute and comport with due process. "Under Massachusetts law, a plaintiff seeking to establish personal jurisdiction has a twofold burden of demonstrating that the Massachusetts Long Arm Statute, G.L. c. 223A, authorizes jurisdiction over the defendant[s], and that any such exercise comports with the constraints imposed by the United States Constitution." Noonan v. Winston Co., 902 F.Supp. 298, 302 (D.Mass., 1995), aff'd, 135 F.3d 85 (1 Cir., *311 1998); see also International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)(establishing standard for court's exercise of personal jurisdiction).
Thus, all of FLV's contacts with the United States as a whole must be taken into consideration in determining whether this Court may exercise in personam jurisdiction over FLV as to the federal securities claims, and FLV's contacts with Massachusetts must be considered in deciding whether this Court may exercise jurisdiction over FLV as to the solely state law claims. For the reasons discussed below, I find that FLV had sufficient contacts with both the United States and with Massachusetts to support a finding of personal jurisdiction as to the federal securities claims and the state law claims.[10]
B. The Class Plaintiffs' Federal Securities Claims
The Class Plaintiffs contend that this Court can exercise both general and specific jurisdiction over FLV. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity ... in the forum state." Pleasant St. I., 960 F.2d at 1088. The exercise of general jurisdiction also must be reasonable as demonstrated by certain "gestalt factors." Swiss American Bank, 274 F.3d at 619 (quoting Helicopteros Nacionales de Colombia, S.A., v. Hall, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).
Specific jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendant's forum based contacts." Noonan, 902 F.Supp. at 302 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1 Cir., 1994)). That is, specific jurisdiction is appropriate when "(1) the claim `directly relates to or arises from the defendant's contacts with the forum'; and (2) `the contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws.'" Levin v. Harned, 292 F.Supp.2d 220, 225 (D.Mass., 2003)(quoting Swiss American Bank, 274 F.3d at 623).
However, the Class Plaintiffs are incorrect in focusing their attention on general and specific jurisdiction. That is because in this case, where the Exchange Act authorizes nationwide service of process, there is a two-pronged analysis to determine whether the Court can exercise jurisdiction over FLV, consisting of whether the defendant had "minimum contacts" with the United States and whether exercising jurisdiction over the defendant comports with due process. "Once minimum contacts have been established [in a nationwide service of process case], we assess whether the exercise of personal jurisdiction is consistent with `traditional notions of fair play and substantial justice.'" Pinker v. Roche Holdings Ltd., 292 F.3d 361, 370 (3 Cir., 2002); see also Peay v. BellSouth Medical Assistance Plan, 205 F.3d 1206, 1210 (10 Cir., 2000)(stating that in nationwide service of process case, the exercise of jurisdiction over defendants must comport with due process); Republic of Panama v. BCCI Holdings (Luxembourg) *312 S.A., 119 F.3d 935, 942 (11 Cir., 1997)("we first determine whether the applicable statute confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process"); D'Addario v. Geller, 264 F.Supp.2d 367, 387 (E.D.Va., 2003)("Because defendants ... have been validly served pursuant to RICO's nationwide service provision, in personam jurisdiction over them is established, provided that it comports with due process considerations.").
The Class Plaintiffs argue that FLV had "pervasive contacts with the U.S. through its agents, FLV Management and FLV-USA." (# 635, p. 13) FLV strongly disagrees, asserting that "[f]ar from having continuous and systematic contacts with Massachusetts or the United States, FLV's ... contacts were sharply limited, and consisted solely of making passive investments in U.S. companies." (# 656, p. 10) Because there is no dispute that FLV itself had few, if any, contacts with the United States, the issue thus boils down to whether the actions of FLV Management and FLV-USA can be imputed to FLV and if so, whether those contacts satisfy the "minimum contacts" test and whether exercising jurisdiction over FLV comports with due process.
1. Agent or Alter Ego?
The Class Plaintiffs have a fairly high hurdle to clear in order to establish that the actions of FLV-USA should be attributed to FLV because "as a general rule, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent." Purdue Research Found. v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 788 n. 17 (7 Cir., 2003). There is an exception to this rule when the parent company "exerts greater than normal control" over the subsidiary. Id. However, it is always true that "`[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent.'" Id. (quoting IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537, 540 (7 Cir., 1998)).
In In re Lupron Marketing and Sales Practices Litig., 245 F.Supp.2d 280 (D.Mass., 2003), Judge Stearns cogently set forth the test for determining when personal jurisdiction over the parent can be exerted by virtue of the subsidiary's contacts with the forum:
In those cases where personal jurisdiction over the parent has been found to exist, there is invariably a "plus" factor  something beyond the subsidiary's mere presence within the bosom of the corporate family. Sometimes, the parent has utilized the subsidiary in such a way that an agency relationship between the two corporations can be perceived  and that is enough.... On other occasions, jurisdiction has been premised on a finding of control-not merely the degree of control innately inherent in the family relationship, but the exercise of control by the parent "greater than that normally associated with common ownership and directorship."... The same result obtains when the subsidiary is merely an empty shell.
245 F.Supp.2d at 291-92 (quoting Donatelli v. National Hockey League, 893 F.2d 459, 465-66 (1 Cir., 1990))(internal citations omitted).
Thus, there are three different ways in which this Court could exercise jurisdiction over FLV by virtue of FLV-USA's contacts with the U.S. (or contacts with Massachusetts, in the case of the state law claims): (1) if FLV-USA can be considered an agent of FLV; (2) if FLV exercised a greater than normal amount of control over FLV-USA; or (3) if FLV-USA was a so-called "empty shell." There *313 is no evidence that FLV-USA was an empty shell; therefore, for jurisdiction over FLV to be appropriate, FLV-USA must have been an agent of FLV or FLV must have exerted greater than average control over FLV-USA. The second test-greater than normal control exerted by the parent-is also known as the alter ego test. See, e.g., Danton v. Innovative Gaming Corp. of America, 246 F.Supp.2d 64, 71 (D.Me., 2003)(quoting Russell v. Enterprise Rent-A-Car of Rhode Island, 160 F.Supp.2d 239, 252 (D.R.I., 2001))("Under the alter ego rule, a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."); Harris Rutsky & Co. Insurance Svcs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1134-35 (9 Cir., 2003)(quoting Calvert v. Huckins, 875 F.Supp. 674, 678 (E.D.Cal., 1995))("To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff ... must show that the parent exercises such control over the subsidiary so as to `render the latter the mere instrumentality of the former.'").
Thus, the Class Plaintiffs must provide sufficient evidence either that FLV-USA was the agent of FLV (or FLV Management) or that FLV-USA was FLV's alter ego such that the "corporate veil should be pierced". If the Class Plaintiffs can make such a showing, then they would have cleared the first hurdle in demonstrating that it would be appropriate for this Court to exercise jurisdiction over FLV based on FLV-USA's contacts with the U.S.[11]
The Court therefore must determine whether FLV-USA was an agent of FLV or FLV Management or whether FLV-USA and FLV (or FLV Management) can be considered alter egos of one another. "The issue of agency is distinct from the issue of whether a parent corporation is subject to personal jurisdiction based on the contacts of its subsidiary, a question that depends upon piercing of the corporate veil." Dagesse v. Plant Hotel N.V., 113 F.Supp.2d 211, 216 n. 2 (D.N.H., 2000). However:
[f]or purposes of personal jurisdiction, agency and alter ego, while different legal concepts, often depend on the same facts when parent and subsidiary corporations are involved. Such control could be evidence that the subsidiary is the parent's alter ego because the subsidiary has no real separate corporate existence. Similarly, such control could be evidence that the subsidiary is the parent's agent because the subsidiary is conducting the `real' business of the parent, which is formally only a holding company. The objective of either theory is to establish that the parent company has the minimum contacts with the forum necessary to support a finding of general jurisdiction.
SGI Air Holdings II LLC v. Novartis Int'l AG, 239 F.Supp.2d 1161, 1166 (D.Colo., 2003).
2. Alter Ego[12]
As for determining whether FLV-USA was the alter ego of FLV or FLV Management, the Court must examine "`factors that demonstrate whether corporate formalities have been observed. *314 These factors include whether the parent corporation and its subsidiary were separately incorporated, had separate boards of directors, maintained separate financial records, and had separate facilities and operating personnel.'" Danton, 246 F.Supp.2d at 72 (quoting Russell, 160 F.Supp.2d at 252). See also City of Bangor v. Citizens Communication Co., No. Civ. 02-183-B-S, 2003 WL 22183205, *3 (D.Me., Sept.22, 2003), Report and Recommendation adopted by 2003 WL 22913423 (D.Me., Dec.1, 2003)(stating that factors to consider are the "failure to observe corporate formalities, inadequate capitalization, commingling of funds, overlapping ownership, officers, directors and personnel....").
The First Circuit has "suggested a significantly heightened standard for the exercise of personal jurisdiction, based exclusively on veil-piercing factors, over a foreign defendant, including a showing of fraud." City of Bangor, 2003 WL 22183205, at *3 n. 4 (citing Pleasant St. I, 960 F.2d at 1093-94). The Court in Pleasant Street I specifically set out that in applying a federal veil-piercing standard, the plaintiffs must present in an ERISA-related dispute evidence that inter alia "some fraudulent intent existed on the principals' [i.e., the parent's] part." 960 F.2d at 1093. While the Court seemed to be limiting that stringent standard to ERISA cases, subsequent cases have construed the rule set forth in Pleasant St. I to mean that in this Circuit in a federal question case, "personal jurisdiction cannot be exercised over a foreign company through a corporate veil-piercing theory absent a showing of fraud." Mass. Carpenters Central Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 308 (1 Cir., 1998); see also Schaefer v. Cybergraphic Systems, Inc., 886 F.Supp. 921, 925 (D.Mass., 1994)(in order to pierce the corporate veil to exercise personal jurisdiction, there must be a showing that inter alia "the principal had some fraudulent intent in its modus operandi.").
In Pleasant St. I, the Court explained that "fraud" meant that there must be some showing that "the parent corporation maintained the subsidiary to avoid its statutory responsibilities, acted in a blameworthy manner, looted the subsidiary, or so undercapitalized the subsidiary that the latter could not reasonably have been expected to meet its obligations." 960 F.2d at 1093 (citations omitted). In the case at bar, there simply is no showing of the type of fraud contemplated by the Court in Pleasant St. I. Thus, the Class Plaintiffs could not prevail on an alter ego theory of personal jurisdiction.
3. Agency
As an initial matter, it seems that there is little dispute that FLV Management (as opposed to FLV-USA) indeed was an agent of FLV. FLV Management was, under Belgian law, FLV's "statutory manager" and had "full control over the daily operations of" FLV." (# 635, p. 4) The issue at bar is more complicated-was FLV-USA, a direct subsidiary of FLV Management, an agent of FLV such that the contacts of FLV-USA with the forum can be imputed to FLV?
It is clearly established that "[u]nder basic principles of agency law, forum-related contacts made by an agent acting within the scope of an agency relationship are attributable to the principal." Dagesse, 113 F.Supp.2d at 216 n. 2 (citations omitted). The Ninth Circuit has adopted the Third Circuit's definition of a general agent as being one who performs:
duties which are "sufficiently necessary" to the corporation's operations. He should be a "responsible party in charge of any substantial phase" of the corporation's *315 activity. In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity. Authority to act as agent sporadically or in a single transaction ordinarily does not satisfy [the purposes of Fed. Rule 4(d)(3), providing for personal service on the general agent of a domestic or foreign corporation.].
Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 423 (9 Cir., 1977)(quoting Gottlieb v. Sandia American Co., 452 F.2d 510, 513 (3d Cir.), cert. denied sub nom., Wechsler v. Gottlieb, 404 U.S. 938, 92 S.Ct. 274, 30 L.Ed.2d 250 (1971)); see also O'Keefe v. Amin, No. Civ. A 95-12595-WGY., 1996 WL 463685, *2 (D.Mass., Aug.2, 1996) (citations omitted) (stating that an agent is "one who acts on behalf of and with the authorization of another."); Harris Rutsky, 328 F.3d at 1134 (citations omitted)("The agency test permits the imputation of contacts where the subsidiary was `either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself.'"); Restatement (Second) of Agency, § 1 (1958)("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.").
The Class Plaintiffs put forth the following evidence that FLV-USA was an agent of FLV or FLV Management:
. FLV-USA "was a subsidiary in name only, set up ... solely to carry out the business of FLV...in the U.S." (# 635, p. 16);
. FLV-USA "had no business of its own, but rather existed only to do the work of FLV" (Id.);
. FLV-USA was "thinly capitalized with an initial capital investment of only $50,000" and "depended entirely on the funds it received from [FLV Management], which came ultimately from" FLV (# 635, pp. 7, 16);
. FLV-USA's "board and officer ranks were dominated by senior members" of FLV Management (Id., p. 16);
. FLV essentially had "only one employee, who took direction exclusively from and reported to" FLV Management (Id.);
. Apparently, FLV-USA had only one board of directors' meeting ever, and that was convened to effectuate its liquidation (Id., p. 16, n. 9);
. The FLV-USA service agreement explicitly grants FLV-USA the authority to act as an agent of FLV and establishes that "FLV-USA's sole purpose was to further the interests" of FLV (Id., p. 16-17);
. FLV-USA's employees "regularly held themselves out as acting for" FLV (Id., p. 1);
. FLV Management was the "sole shareholder of FLV-USA and controlled its board of directors, all of whose members except [one] were officers or directors of FLV Management" (Id., p. 6);
. Vermeulen acted simultaneously as an officer of both FLV Management and FLV-USA, often signing documents as the President of FLV-USA (Id.);
. Vermeulen was "succeeded as FLV-USA CFO by Jan Leys, who at the same time was also the CFO of FLV Management" (Id.);
. The service contract between FLV Management and FLV-USA provides that "`all title to and registration of all shares'" of investments made by FLV-USA are to be made "in the name of FLV Fund C.V.A.'" (Id., p. 8).
*316 In taking note of one court's apt assessment that "[l]ike all questions of personal jurisdiction, the assessment of whether a corporate parent's connections to its subsidiary are sufficiently involved to be treated as direct connections to the forum is highly fact-specific," City of Bangor, 2003 WL 22183205, at *4, I find that for the purposes of the Class Plaintiffs' federal securities claims, FLV-USA was the agent of FLV Management or FLV.
In In re Lupron, the Court explained that "a parent's oversight of a subsidiary's business plans is not ordinarily a sufficient `plus' to tip the jurisdictional scale," such that exercising jurisdiction over the parent is appropriate. 245 F.Supp.2d at 292. Similarly, in Ames v. Whitman's Chocolates, No. 91-3271, 1991 WL 281798, *7 (E.D.Pa., Dec.30, 1991), the Court held that general jurisdiction over the parent was not appropriate because the subsidiary "was not created by the parent corporation for tax or finance purposes to carry on their business" and "the parent company ... did not directly supervise and control the major decisions concerning the operations of the" subsidiary. 1991 WL 281798, at *6.
In the case at bar, the Class Plaintiffs have presented enough evidence above and beyond evidence of a normal parent-subsidiary relationship to support the finding that FLV-USA was the agent of FLV Management (or FLV). FLV-USA acted solely on behalf of FLV and indeed, as set forth in the service contract, it was set up exclusively for the purpose of carrying on FLV's business. In addition, there is little doubt that FLV-USA was acting with the authority of, and with the ability to bind, FLV. Specifically, the service contract between FLV Management and FLV-USA provides that the title to and registration of all shares of investments made by FLV-USA are to be made in the name of FLV. And, finally, there is evidence that FLV Management exercised significant decision-making over FLV-USA. Thus, I find that FLV-USA was the agent of FLV Management or FLV, such that FLV-USA's contacts with the U.S. should be imputed to FLV. See SGI Air Holding, 239 F.Supp.2d at 1169 (holding that the subsidiary was the "general agent" of the parent, subjecting the parent to general jurisdiction based on the fact that the parent exercised day to day control over the subsidiary in three areas: (1) capital investment decisions; (2) personnel decisions; and (3) business and management decisions.).
4. Did FLV itself and through its agent, FLV-USA, have sufficient minimum contacts with the United States?
In assessing "minimum contacts" with the U.S., "it is essential... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum..., thus invoking the benefits and protections of its laws." Pleasant St. I, 960 F.2d at 1088 (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); see also Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (purposeful availment requirement assures that jurisdiction will not be based solely upon a defendant's "random, isolated, or fortuitous" contacts with the forum state).
In the instant case, the plaintiffs have proffered evidence that FLV itself derived a substantial portion of its revenue from the U.S., that it had bank and brokerage accounts here, that it appeared in U.S. Bankruptcy Court proceedings here, that FLV Management contacted the U.S. regularly regarding FLV's investments, that FLV Management employees made *317 monthly trips to the U.S. related to FLV's investments and that FLV-USA had offices in Massachusetts and California, leased property in both those states, and participated in various business-related activities in the U.S., including: "(1) reviewing investment proposals; (2) analyzing potential investments; (3) conducting due diligence; (4) participating in the management of U.S. companies by sitting on their boards of directors; (5) monitoring [FLV's] U.S. investments; and (6) making investment recommendations for [FLV] with respect to U.S. companies." (# 635, p. 17, p. 18 n. 10).
Moreover, FLV-USA "registered to do business in Massachusetts in 1999, submitted annual filings and maintained, during its existence, a resident agent" in Massachusetts. (# 336, p. 3) Additionally, "FLV personnel held meetings in Massachusetts, ... regarding FLV's investments ... [and] various employees and officers of FLV ... and FLV-US[A] visited and worked at FLV-US[A's] Massachusetts offices." (Id. at p. 7) Finally, "FLV invested $1,350,000 in the equity of SwiftTouch Corp. based in Woburn, Massachusetts and subsequently invested an additional $550,000 in a convertible promissory note of SwiftTouch." Thus, it is clear that FLV itself (and through FLV Management and FLV-USA) purposefully availed itself of the privilege of conducting business in the U.S. and could reasonably anticipate being haled into court here, such that it had sufficient minimum contacts with the U.S.
5. Does the exercise of jurisdiction over FLV comport with due process?
As stated above, in order to exercise jurisdiction over FLV pursuant to the nationwide service of process provision, not only must FLV have had minimum contacts with the U.S. as a whole (which it did, through its agent, FLV-USA), but exercising jurisdiction over FLV must be consistent with due process concerns. The issue thus is what is the correct test to apply to determine whether exercising jurisdiction over FLV comports with due process? This issue has not been squarely resolved by the courts, although it is well established that when "a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment." Republic of Panama, 119 F.3d at 942.[13]
In Pinker, the Third Circuit held that the due process test is similar to the test employed in the state courts, but that the "inquiry will be slightly different, taking less account of federalism concerns, ... and focusing more on the national interest in furthering the policies of the law(s) under *318 which the plaintiff is suing." 292 F.3d at 370-71 (citations omitted). Similarly, in CSR Ltd. v. Federal Ins. Co., 146 F.Supp.2d 556, 562-63 (D.N.J., 2001), the Court looked to the factors set out in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), specifically "1) the burden on the defendant; 2) the forum state's interest in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate justice system's interest in obtaining the most efficient resolution of controversies, and, if relevant, 5) the shared interest of the several states in furthering substantive social policies." See also Peay, 205 F.3d at 1211 (relying on five balancing factors, similar, but not identical, to those factors set out in the Burger King case); Republic of Panama, 119 F.3d at 948 ("When a defendant makes a showing of constitutionally significant inconvenience, jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant."); Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390 (8 Cir., 1991)(applying a five part balancing test to determine whether the exercise of jurisdiction comports with due process); D'Addario, 264 F.Supp.2d at 387 (holding that the exercise of personal jurisdiction comported with due process in a nationwide service of process case because "there is no evidence in the record suggesting extreme inconvenience or unfairness in litigating in this forum....")
Because the First Circuit has never addressed which factors to use in determining whether the exercise of jurisdiction in a nationwide service of process case comports with due process, this Court will rely on the so-called gestalt factors which are nearly identical to those factors set out in the Burger King case. The "First Circuit has set forth five factors, known as the `gestalt factors.'" Girl Scouts of the USA, 218 F.Supp.2d at 64 (citations omitted). The five so-called gestalt factors are: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Girl Scouts of the USA, 218 F.Supp.2d at 64-65 (internal citations omitted).
The gestalt factors weigh in favor of exercising jurisdiction over FLV as to the federal securities claims. As to the burden of appearing, it is clearly a burden for FLV to appear in a United States court since its office is located in Belgium and FLV-USA's office in the U.S. no longer exists. (# 656, p. 6) However, "this factor is `only meaningful where a party can demonstrate some kind of special or unusual burden.' "Girl Scouts of the USA, 218 F.Supp.2d at 65 (quoting Pritzker, 42 F.3d at 64). FLV has not shown that appearing in a U.S. court would present a "special or unusual burden" and thus this factor is not particularly meaningful. The second factor favors the exercise of jurisdiction over FLV because the U.S. certainly has an interest in adjudicating its securities laws and protecting its citizens from securities fraud. Similarly, the third factor weighs in favor of the Class Plaintiffs because "`a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience.'" Girl Scouts of the USA, 218 F.Supp.2d at 65 (quoting Sawtelle, 70 F.3d at 1395); see also SGI Air Holdings, 239 F.Supp.2d at 1169 (quoting Int'l Shoe, 326 U.S. at 316, 66 S.Ct. 154) ("considering that the alternative *319 to such a ruling [denying defendant's motion to dismiss for lack of personal jurisdiction] appears to be that Plaintiff would have to take its claim to Switzerland, the Court believes that subjecting Defendants to jurisdiction ... would not offend `traditional notions of fair play and substantial justice.'"). For obvious reasons, the Class Plaintiffs have chosen to file suit in the U.S., rather than in Belgium. Thus, that decision must be given appropriate deference.
The fourth and fifth factors either do not weigh in favor of either party or favor the Class Plaintiffs only slightly. There are no substantive social policies at play in the case at bar. And, while the Court's interest in judicial economy and efficiency may be better served by keeping the case in this jurisdiction since other related lawsuits have been filed here, this factor in and of itself would not be enough to tip the scales. However, on balance, the gestalt factors favor the Class Plaintiffs and support the exercise of jurisdiction over FLV. Put another way, exercising jurisdiction over FLV would comport with due process because the five factors under consideration weigh in favor of the plaintiffs.
In sum, I find that FLV-USA was an agent of FLV, FLV (through FLV Management and FLV-USA) had minimum contacts with the U.S., and the exercise of jurisdiction over FLV comports with the notions of fair play and substantial justice. Thus, it is proper for this Court to exercise jurisdiction over FLV as to the Class Plaintiffs' federal securities claims.
6. General and Specific Jurisdiction
Since it already has been decided that the exercise of jurisdiction over FLV is appropriate pursuant to nationwide service of process (See Section IV(B), supra), it is not necessary to determine whether this Court can assert general and specific jurisdiction over FLV. The Court notes, however, without finding, that it is unlikely that it could exercise specific jurisdiction over FLV since it appears that the Class Plaintiffs' claims against FLV did not "arise out of" FLV's contacts with the U.S.
C. Transactional Plaintiffs' State Law Claims
As discussed above, the Transactional Plaintiffs have asserted only state law claims[14]; thus, the exercise of general jurisdiction over FLV as to the state law claims is appropriate if FLV has "engaged in continuous and systematic activity ... in" Massachusetts (Pleasant St. I, 960 F.2d at 1088) and is reasonable as demonstrated by the "gestalt factors." Swiss American Bank, 274 F.3d at 619 (quoting Helicopteros, 466 U.S. at 416, 104 S.Ct. 1868).
The exercise of specific jurisdiction over FLV (as opposed to general jurisdiction) as to the state law claims must satisfy the Massachusetts Long Arm Statute, must comport with due process and must be reasonable in light of the gestalt factors. The Massachusetts Long Arm Statute sets out, that:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or *320 omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does business or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth....
Mass. Gen. L. c. 223A, § 3. The Transactional Plaintiffs posit that the exercise of both general and specific jurisdiction over FLV is appropriate.
1. General Jurisdiction
The Transactional Plaintiffs argue that the assertion of general jurisdiction over FLV is appropriate given the "regular and persistent" contacts of FLV Management and FLV-USA with Massachusetts.[15] As to FLV's contacts with Massachusetts, the Transactional Plaintiffs have proffered evidence that FLV-USA "maintained offices in Massachusetts, leased real property for its employees' residences in Massachusetts, held business meetings with L & H and with other companies in Massachusetts and invested FLV's funds in companies located in Massachusetts." (# 336, p. 3) Moreover, FLV-USA "registered to do business in Massachusetts in 1999, submitted annual filings and maintained, during its existence, a resident agent in this state." (# 336, p. 3) In addition, "FLV personnel held meetings in Massachusetts,...regarding FLV's investments...[and] various employees and officers of FLV...and FLV-US[A] visited and worked at FLV-US[A's] Massachusetts offices." (Id. at p. 7) Finally, "FLV invested $1,350,000 in the equity of SwiftTouch Corp. based in Woburn, Massachusetts and subsequently invested an additional $550,000 in a convertible promissory note of SwiftTouch." (Id.)
The issues therefore are whether FLV-USA's activities in Massachusetts can be attributed to FLV, whether FLV's contacts with Massachusetts were "continuous and systematic" and finally, whether the exercise of jurisdiction over FLV would be appropriate in light of the gestalt factors. Certainly, the activities of FLV-USA in Massachusetts can be considered continuous and systematic. Continuous and systematic means "more than minimal;...those contacts must be extensive and pervasive." Everitt v. Dover Downs Entertainment, Inc., No. Civ. A. 98-6119, 1999 WL 374163, *3 (E.D.Pa., June 9, 1999). In the First Circuit, the analysis for what constitutes "continuous and systematic" contacts is "`a fact-specific evaluation of the defendant's contacts with the forum.'" Swiss American Bank, 274 F.3d at 620 (quoting Noonan, 135 F.3d at 93).
As stated above, FLV-USA registered to do business in Massachusetts in 1999, submitted annual filings here, and FLV personnel held meetings in Massachusetts regarding FLV's investments and employees and officers of FLV and FLV-USA visited and worked in Massachusetts. Finally, FLV invested money in a Massachusetts company. These contacts taken as a whole were continuous and systematic. However, the next matter to be resolved is whether FLV-USA's actions can be imputed to FLV.
*321 As discussed above, I found that as to the Class Plaintiffs' federal claims, the contacts of FLV-USA should be attributed to FLV because FLV-USA was an agent of FLV but that they cannot be imputed pursuant to an alter ego theory. While on the surface, it would appear that the same conclusion would be required as to the Transactional Plaintiffs' state law claims, such a conclusion cannot be reached without first looking at Massachusetts state law regarding agency and piercing the corporate veil.
Massachusetts law permits piercing the corporate veil in certain situations. American Home Assurance Co. v. Sport Maska, Inc., 808 F.Supp. 67, 73 (D.Mass., 1992).
Among these are where there is evidence of (i) fraud, (ii) "pervasive control" beyond mere common ownership and management, or (iii) "a confused intermingling of activity ... with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting."
Sorenson v. H & R Block, Inc., 2002 WL 31194868, *5 (D.Mass., Aug.27, 2002)(quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 618-19, 233 N.E.2d 748 (1968)); see also Cox v. Truck Svcs., Inc., No. Civ.A 99-1602, 2002 WL 765460, *4 (Mass.Super., April 26, 2002)(stating that cases in which Massachusetts courts have pierced the corporate veil "usually involve fraud or deceit, a co-mingling of corporate and personal assets, thin capitalization or non observance of corporate formalities.").
As to the Transactional Plaintiffs' state law claims, therefore, I find that there is sufficient evidence to pierce the corporate veil. The evidence proffered here supports piercing the corporate veil under Massachusetts law: FLV-USA and FLV Management and FLV failed to observe many corporate formalities in that FLV-USA's "board and officer ranks were dominated by senior members" of FLV Management, FLV-USA essentially had "only one employee, who took direction exclusively from and reported to" FLV Management, FLV-USA had only one board of directors' meeting ever, and that was convened to effectuate its liquidation; FLV-USA's ownership and directorship overlapped with that of FLV Management, in that Vermeulen acted simultaneously as an officer of both FLV Management and FLV-USA, often signing documents as the President of FLV-USA. Moreover, Vermeulen was "succeeded as FLV-USA CFO by Jan Leys, who at the same time was also the CFO of FLV Management."; FLV-USA was thinly capitalized with an initial capital investment of only $50,000; and, FLV Management was the "sole shareholder of FLV-USA and controlled its board of directors, all of whose members except [one] were officers or directors of FLV Management." Thus, there is enough evidence to establish either "pervasive control" by FLV and FLV Management over FLV-USA beyond mere common ownership and management, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives were acting, such that piercing the corporate veil as to the Transactional Plaintiffs' claims would be appropriate, provided that the gestalt factors favor the exercise of jurisdiction.
In addition to there being sufficient evidence to find that FLV-USA was the alter ego of FLV, there is also, as discussed at length above, adequate evidence to establish that FLV-USA was the agent of FLV. (See Section IV(B)(3), supra, of this Report and Recommendation). In sum, *322 FLV-USA had the authority to act on FLV's behalf and to bind FLV; FLV Management exercised significant decision-making over FLV-USA, and FLV-USA's duties were "sufficiently necessary" to the operations of FLV.
Moreover, looking specifically at Massachusetts state law, it is clear that Massachusetts courts have adopted a standard definition of agency, similar to that set forth above in Section IV(B)(3), supra of this Report and Recommendation. For example, in Campbell v. Frontier Fishing and Hunting, Ltd., the court held that one Norman Keddy ("Keddy") was the agent of defendant Frontier Fishing and Hunting, Ltd. ("Frontier") because Keddy solicited business for Frontier, distributed Frontier's brochures to a number of stores in Massachusetts, displayed Frontier's brochures at a boat show and persons who wished to make arrangements for Frontier fishing trips were encouraged to call Keddy's telephone number. 10 Mass.App.Ct. 53, 54, 405 N.E.2d 989, 990 (1980). See also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 55 (1 Cir., 2002)(applying state law)("For purposes of personal jurisdiction, the actions of an agent may be attributed to the principal."). Thus, FLV-USA was either the agent or the alter ego of FLV for purposes of the state law claims, and therefore, if the gestalt factors weigh in favor of the Transactional Plaintiffs, it is appropriate to exercise general jurisdiction over FLV as to those claims.
The gestalt factors have been addressed at length above. And, the analysis regarding these factors as to the federal claims and the state claims is basically the same. The factors are: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Girl Scouts of the USA, 218 F.Supp.2d at 64-65 (internal citations omitted). The only difference in the analysis here is that Massachusetts' (as opposed to the U.S.'s) interest in obtaining convenient and effective relief must be considered. While this factor does not weigh heavily in favor of the Transactional Plaintiffs, this factor does tip somewhat in their direction because Massachusetts has a legitimate interest in protecting its citizens from fraud. Thus, as above, on balance, the gestalt factors weigh in favor of exercising jurisdiction over FLV as to the Transactional Plaintiffs' state law claims, and therefore this Court may exercise general jurisdiction over those claims.
2. Specific Jurisdiction
The Transactional Plaintiffs contend further that specific jurisdiction over FLV is merited given that section (a) of the Massachusetts Long Arm Statute is satisfied by virtue of the fact that FLV USA, FLV's agent, "transacted business" in Massachusetts. Since I have already found that FLV-USA was the agent of FLV (or alter ego of FLV for purposes of the state law claims), there can be little dispute that FLV-USA (and thus by attribution, FLV) did transact business in the U.S. and specifically in Massachusetts. However, determining whether specific jurisdiction exists requires that the Court implement a three-step test.
The First Circuit has condensed the principles underlying specific jurisdiction into three analytical components: First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts *323 must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.
Noonan, 902 F.Supp. at 303.
Thus, I first must decide whether the claims at issue here directly arise out of, or relate to, FLV's forum state activities.
Interestingly, the Transactional Plaintiffs do not even address the issue of whether their claims against FLV arose from FLV's transaction of business in Massachusetts.[16] The most that the Transactional Plaintiffs say in this vein is that the fraud perpetrated by L & H "was directed in part to Massachusetts residents," that FLV was "aware of the strategic partner fraud" and that the Dragon and Dictaphone transactions "involved fraud that was originated, in part, in Massachusetts and was aimed at Massachusetts." (# 336, p. 14) Notably, there is no mention of FLV's contacts with Massachusetts being part of the fraud perpetrated by L & H. FLV, on the other hand, aptly points out that "there is no contention in the Complaints that the fraud [allegedly perpetrated by FLV] stemmed from or arose of FLV's contacts in Massachusetts or investments in companies located in Massachusetts." (# 656, p. 4)
In short, the Filler Plaintiffs, for example, allege in their complaints that: FLV invested in several Singapore companies (# 28 in 02-10302 at ¶ 99); L & H improperly recognized license revenue from FLV telecom (# 28, ¶ 129); FLV invested in the "Dictation Consortium" (Id. at ¶ 130); FLV was a "related party" whose "ownership of at least eight of the entities that were the subject of the SEC inquiry and funding of four others was not disclosed...." (# 28 at ¶ 160); FLV "engaged and participated in a continuous course of conduct [to] artificially inflate the price of L & H common stock and to conceal its true financial condition" (Id. at ¶ 195).[17]
Therefore, there is no basis for this Court to exercise specific jurisdiction over FLV since there is no evidence that the Transactional Plaintiffs' claims against FLV arose from FLV's transaction of business in Massachusetts. And, because I find that the Massachusetts Long Arm Statute is not satisfied, I need not, and should not, address the constitutional issues regarding specific personal jurisdiction over FLV. "Where a plaintiff is clearly unable to establish jurisdiction as a matter of state law, it is the better practice to end the inquiry without addressing constitutional concerns." Noonan, 902 F.Supp. at 306, n. 12 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 205 (1 Cir., 1994)).
3. Pendent Personal Jurisdiction
The Transactional Plaintiffs argue that this Court may exercise jurisdiction over *324 their state law claims pursuant to the doctrine of pendent personal jurisdiction. While the First Circuit never has adopted such a doctrine, the District of Massachusetts has utilized the doctrine of pendent personal jurisdiction, although infrequently. As Judge Young explained in Nahigian v. Leonard, 233 F.Supp.2d 151, 159 (D.Mass., 2002):
several major circuit courts and the District of Massachusetts, primarily on grounds of efficiency, have interpreted Rule 4(k) to allow nationwide service of process to be effective for state law claims alleged by the plaintiff that arise from the same nucleus of operative facts as the plaintiff's federal claims that benefit from nationwide service. This doctrine is termed "pendent personal jurisdiction."
In Nahigian, the Court ultimately held that it had personal jurisdiction over the defendants with respect to the state claim as well as the federal claim because "the state claim appears to arise from the same nucleus of operative facts as the [federal] claims." 233 F.Supp.2d at 160; see also Amtrol, Inc. v. Vent-Rite Valve Corp., 646 F.Supp. 1168, 1175 (D.Mass., 1986)(holding that where the court "obtains jurisdiction over a defendant pursuant to the extraterritorial service of process provision of the Clayton Act, it may, in its discretion, exercise jurisdiction over that defendant with respect to state law claims that arise out of a common nucleus of operative fact."). In the instant case, the Transactional Plaintiffs' state law claims arise out of a common nucleus of operative fact with the federal claims. Put very simply, all the claims arise out of L & H's purported fraud and purported collusion with other defendants in perpetrating that fraud. Therefore, I find that it would be appropriate to exercise personal jurisdiction over the state law claims pursuant to the doctrine of pendent personal jurisdiction.
In conclusion, while I find that it is appropriate to exercise general jurisdiction over FLV as to the Transactional Plaintiffs' state law claims and, in the alternative, pendent personal jurisdiction over those claims, I also find that the Court should not exercise specific jurisdiction over FLV as to those claims.

V. Recommendation
For the reasons stated, I RECOMMEND that Defendant Flanders Language Valley Fund's Motion to Dismiss for Lack of Personal Jurisdiction (# 199 in 00-CV-111589; # 108 in 02-CV-10302; # 86 in 02-CV-10303; # 93 in 02-CV-10304) be DENIED.

VI. Review by the District Judge
The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to this report and recommendation must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1 Cir., 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1 Cir., 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1 Cir., 1983); United States v. Vega, 678 F.2d 376, 378-379 (1 Cir., 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1 Cir., 1980); see also Thomas *325 v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).
August 12, 2004.
NOTES
[1] FLV is named as a defendant in In re: Lernout & Hauspie Securities Litigation (00-CV-11589), Filler v. Lemout, (00-CV-10302), Stonington Partners, Inc. et al. v. Dammekens et al. (02-CV-10303), Roth et al. v. KPMG LLP et al. (02-CV-10304), and Baker et al. v. KPMG LLP et al. (02-CV-10305, which has been consolidated with 02-CV-10304). The term "Complaint" herein is used to refer to all the Complaints against FLV, unless otherwise noted. Specific citations to the "Complaint" are to the Complaint filed in 00-11589 (Docket entry # 96), unless otherwise noted.
[2] The Class Plaintiffs will be referred to herein simply as the plaintiffs, unless otherwise noted.
[3] All references in this Report and Recommendation to the Transactional Plaintiffs' brief shall be to docket # 336 in 02-10302, unless otherwise noted.
[4] Because the facts underlying this litigation have been extensively recounted in several different opinions, I do not restate them again here. I will include only those facts necessary for resolution of the instant motion.
[5] Although FLV originally included other grounds for dismissal in its motion, the only ground referred to the undersigned and fully briefed and argued at the November, 2003 hearing was the motion to dismiss for lack of personal jurisdiction. Thus, this Report and Recommendation addresses only that ground. The other grounds are reserved for decision by the District Judge to whom this case is assigned.
[6] As anyone with even a passing knowledge of this case is aware, L & H is the entity at the center of this litigation.
[7] The Filler plaintiffs have alleged violations of both state and federal law.
[8] Specifically, the Class Plaintiffs have asserted claims against FLV under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j ("Section 10(b)") and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ("Rule 10b-5").
[9] Whether FLV in this case was served pursuant to Fed.R.Civ.P. 4(k) or via the Hague Convention is not relevant for purposes of deciding whether to allow FLV's motion to dismiss. See Motorola Credit Corp. v. Uzan, No. 02 CIV 666, 2002 WL 31319932, *1 (S.D.N.Y., Oct. 16, 2002) (stating that in a RICO case where RICO authorizes nationwide service of process, defendants nevertheless were "properly served ... pursuant to the Hague Convention.").
[10] Given that the Court finds that jurisdiction exists over FLV as to the Transactional Plaintiffs' state law claims, as well as the Class Plaintiffs' federal claims, the Court need not address the Transactional Plaintiffs' arguments that jurisdiction is appropriate pursuant to the conspiracy theory of jurisdiction. To the extent that the Transactional Plaintiffs are arguing that this Court can exercise jurisdiction over FLV under the doctrine of "pendent personal jurisdiction", that theory is addressed briefly below. See Section IV(C)(3) of this Report and Recommendation.
[11] It would still have to be shown that the exercise of general jurisdiction over FLV is reasonable in light of due process factors.
[12] I note that neither the Class Plaintiffs nor the Transactional Plaintiffs made the argument that FLV-USA was the alter ego of FLV. However, in order to be thorough, the issue will be addressed albeit summarily.
[13] Indeed, some courts do not even proceed to undertake a full due process analysis, but simply stop once it has been determined that the defendant had minimum contacts with the U.S. That is, in a nationwide service of process case, if the defendant had minimum contacts with the U.S., that is enough for the court to exercise personal jurisdiction over that defendant. See, e.g., Miller Pipeline, 901 F.Supp. at 1423 (holding that defendant's contacts with the U.S. "are sufficient to support personal jurisdiction ... under a national contacts approach."); Burnett v. Al Baraka Investment and Dev't Corp., 274 F.Supp.2d 86, 95 (D.D.C., 2003)(quotations omitted)("Because the statute provides for nationwide service of process, the relevant Due Process inquiry for personal jurisdiction purposes, assuming the defendant has been properly served, is whether the defendant has had minimum contacts with the United States.") As one court stated, there "is considerable debate ... over the scope of the limits imposed by the Fifth Amendment when jurisdiction is established via a nationwide service of process provision." Republic of Panama, 119 F.3d at 942.
[14] While the Filler plaintiffs have brought both federal and state law claims, this section of the Report and Recommendation addresses only the state law claims and refers to the Transactional Plaintiffs collectively. To the extent that the Filler plaintiffs have asserted federal claims, the previous section of the Report and Recommendation addressing the Class Plaintiffs' claims applies equally to the Filler plaintiffs.
[15] The Class Plaintiffs highlighted FLV's and FLV-USA's contacts with the U.S. as a whole and the Transactional Plaintiffs address FLV's and FLV-USA's contacts specifically with Massachusetts. However, in short, their arguments are similar-that jurisdiction over FLV is appropriate given the activities of FLV Management and FLV-USA. General personal jurisdiction as to the Transactional Plaintiffs' claims "requires evidence that the defendant [here, FLV] regularly conducted business in Massachusetts." Biopharma Capital, Ltd. v. Lydon, No. 01-1926, 2002 WL 31957013, *4 (Mass.Super., Dec.2, 2002).
[16] By contrast, the Class Plaintiffs do argue summarily that their claims arose out of FLV's contacts with the U.S. Of course, even if it were true that the Class Plaintiffs' claims arose out of FLV's contacts with the U.S., this does not assist the Transactional Plaintiffs because they have to establish that their own claims arose out of FLV's contacts with Massachusetts.
[17] Likewise, in the other Transactional Plaintiffs' complaints, the Court did not find, and the Transactional Plaintiffs did not point out, any allegations that the claims against FLV arose from FLV's transaction of business in Massachusetts.